[No. 34589-7-II. Division Two. May 30, 2007.]

LLOYD NISHIKAWA ET AL., *Appellants*, v. U.S. EAGLE HIGH, LLC, *Respondent*.

*Thomas H. Oldfield* (of *Oldfield & Helsdon, PLLC*), for appellants.

*Timothy L. Ashcraft* (of *Williams Kastner & Gibbs*), for respondent.

¶1 QUINN-BRINTNALL, J. — U.S. Eagle High, LLC, through its sole member, Choo W. Kim, signed a purchase and sale agreement to sell its commercial property to Lloyd and Monica Nishikawa. One real estate agent represented both parties to the transaction. The agreement stipulated that the dual agent would add the property's legal description as a contract addendum. Without a legal description, the agreement is not legally binding.

¶2 After entering the agreement but before the dual agent added the legal description, U.S. Eagle decided that it wanted an environmental indemnity clause that was not contained in the agreement in order to prevent the Nishikawas from suing U.S. Eagle if they discovered environmental contamination on the property. U.S. Eagle instructed the dual agent not to add the legal description to the contract. The agent did so anyway. When U.S. Eagle refused to close the sale without first receiving assurances of indemnification, the Nishikawas sued for specific performance.

¶3 The trial court granted U.S. Eagle's motion for summary judgment and denied the Nishikawas' cross-motion for summary judgment. It reasoned that the purchase and sale agreement was void because U.S. Eagle had revoked the dual agent's authority to attach the legal description, which was essential to validate the contract under the statute of frauds. But we hold that under the purchase and sale agreement, U.S. Eagle contracted away the right to unilaterally revoke the dual agent's authority to add the property description. Accordingly, the purchase and sale agreement is valid and binding under the statute of frauds. Thus, we reverse the grant of summary judgment to U.S. Eagle and the accompanying grant of attorney fees, affirm the denial of summary judgment for the Nishikawas, and remand for further proceedings consistent with this opinion.

## FACTS

¶4 The facts before the trial court on the motion for summary judgment were, in relevant part, undisputed. Kim owned a commercial property in Tacoma.[1] Kim transferred the property to U.S. Eagle, a limited liability corporation for which Kim is the sole member. The Nishikawas had recently sold another property and wanted to buy U.S. Eagle's property as part of a tax-deferred exchange. They all agreed that Sung Lee of Windermere Real Estate would serve as a dual agent, representing both the buyer and the seller.

¶5 The parties signed a purchase and sale agreement. Relevant here, the agreement contained two clauses that relate to attaching the property's legal description and an integration clause. In the agreement, the "Buyer and Seller authorize[d] the Listing Agent or Selling Licensee to insert and/or correct, over their signatures, the legal description

---

[1] The property's legal description is: Lots 2 and 3, Pierce County Short Plat, recorded February 7, 1995, under recording number 9502070438, Records of Pierce County Washington. The common addresses are 13415, 13415½, 13417, and 13417½ Pacific Avenue South, Tacoma, Washington.

of the Property." Clerk's Papers (CP) at 14. And in an amendment to the boilerplate contract, the parties added that the "Seller [U.S. Eagle] shall provide the legal description." CP at 20. The integration clause read: "The Agreement and any addenda and exhibits to it state the entire understanding of Buyer and Seller regarding the sale of the Property. There are no verbal or written agreements which modify or affect the Agreement." CP at 18.

¶6 U.S. Eagle was unhappy with the deal. It wanted an agreement to indemnify it and Kim for environmental liability, even though the purchase and sale agreement contained no such clause. Kim declares that he always intended to include an indemnification clause and that he would not have signed the agreement if he had known it did not contain that term. Kim is not fluent in English, the agreement is written in English, and Kim asserts that he relied on the dual agent, Lee, to explain the terms in Korean. Kim alleges that Lee failed to inform him adequately of the terms before he signed the agreement.

¶7 U.S. Eagle's attorney sent a letter to Lee and Windermere's branch manager, Wanda Coats.[2] The property's legal description had not yet been attached to the contract. The letter explained that (1) U.S. Eagle wanted environmental indemnity and so did not want the agreement to mature into an enforceable contract, (2) the agreement was unenforceable without the property's legal description, and (3) Lee and Coats would violate their fiduciary duty to U.S. Eagle if it hurt U.S. Eagle's negotiating position. And the letter said, "I understand that the Purchase and Sale Agreement . . . does provide that the listing agent or selling licensee may attach a legal description. Understand, Mr. Kim is instructing Mr. Lee explicitly not to do this." CP at 26. Despite U.S. Eagle's letter, Coats attached the legal description to the purchase and sale agreement.

¶8 U.S. Eagle then proposed an environmental indemnity agreement, but the Nishikawas rejected the proposal.

---

[2] The parties do not dispute that Coats had agency authority to act on Lee's behalf. As it is confusing and unnecessary to refer to Coats as the agent of a dual agent, we instead refer to her role while serving Lee as that of a dual agent.

Even though all contingencies were satisfied, U.S. Eagle refused to close the sale.

¶9 The Nishikawas sued U.S. Eagle, alleging breach of contract and seeking damages and specific enforcement of the agreement. The parties filed cross-motions for summary judgment. The trial court granted summary judgment and contractual attorney fees and costs to U.S. Eagle, rejected the Nishikawas' motion for summary judgment, and dismissed the action.

¶10 This appeal requires us to answer three questions: (1) whether the purchase and sale agreement is unenforceable because U.S. Eagle revoked the dual agent's authority to add the property's legal description, (2) whether we should enter summary judgment for the Nishikawas, and (3) whether we should grant the Nishikawas' request for attorney fees.

## ANALYSIS

¶11 The Nishikawas argue that the trial court erred when it (1) granted summary judgment to U.S. Eagle and (2) denied their own motion for summary judgment. We agree that summary judgment was improperly granted to U.S. Eagle but hold that it would be premature for us to enter summary judgment to the Nishikawas. A party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of material fact. *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990). If the moving party satisfies its burden, the nonmoving party must present evidence demonstrating that material facts are in dispute. *Atherton*, 115 Wn.2d at 516. If the nonmoving party fails to do so, summary judgment is proper. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005).

¶12 We review a summary judgment de novo and perform the same inquiry as the trial court. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860, 93 P.3d 108

(2004). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). We consider all facts in the light most favorable to the nonmoving party. *Vallandigham*, 154 Wn.2d at 26. A court should grant summary judgment only if reasonable persons could reach but one conclusion from all the evidence. *Vallandigham*, 154 Wn.2d at 26.

Agent's Authority

¶13 U.S. Eagle argues that the agreement is unenforceable because the company revoked the dual agents' authority to attach the legal description, so the legal description is not part of the agreement and, thus, the agreement fails under the statute of frauds. But when it signed the purchase and sale agreement, U.S. Eagle contracted away its right to revoke the dual agents' authority to attach the legal description, and summary judgment to U.S. Eagle was therefore erroneous.[2]

¶14 In cases such as this one, where the facts are undisputed, the legal effect of a contract is a question of law that we review de novo. *Yeats v. Estate of Yeats*, 90 Wn.2d 201, 204, 580 P.2d 617 (1978). Under the statute of frauds, every sales contract for real property must contain the legal description of the property's correct lot number, block number, addition, city, county, and state. *Martin v. Seigel*, 35 Wn.2d 223, 229, 212 P.2d 107 (1949). This requirement is

---

[2] The Nishikawas argue that *Edwards v. Meader*, 34 Wn.2d 921, 925, 210 P.2d 1019 (1949), and its progeny hold that a real estate contract is enforceable if it either contains a legal description *or* authorizes an agent to add the legal description. We disagree with this reading of *Edwards*. In each case that the Nishikawas rely on, there was no question that the agent had authority to attach the legal description to the contract and an agent did in fact add a legal description. *See Edwards*, 34 Wn.2d at 925; *see also Noah v. Montford*, 77 Wn.2d 459, 462-63, 463 P.2d 129 (1969); *McKoin v. Kunes*, 5 Wn. App. 731, 734, 490 P.2d 735 (1971). These cases stand for the proposition that parties may add the legal description after they sign the contract. Thus, they implicate only the statute of fraud's temporal requirement.

strict. *Key Design, Inc. v. Moser*, 138 Wn.2d 875, 881-84, 983 P.2d 653 (1999). But the contractors need not include the legal description when they sign the contract. They may instead appoint an agent to add or write in the legal description. *Edwards v. Meader*, 34 Wn.2d 921, 925, 210 P.2d 1019 (1949). If the agent enters the legal description, then the agreement satisfies this provision of the statute of frauds. *McKoin v. Kunes*, 5 Wn. App. 731, 734, 490 P.2d 735 (1971).

¶15 When interpreting a contract, we give undefined terms their plain, ordinary, and popular meaning. *Kitsap County v. Allstate Ins. Co.*, 136 Wn.2d 567, 576, 964 P.2d 1173 (1998). And we harmonize clauses that seem to conflict. Our goal is to interpret the agreement in a manner that gives effect to all the contract's provisions. *Mayer v. Pierce County Med. Bureau, Inc.*, 80 Wn. App. 416, 423, 909 P.2d 1323 (1995).

¶16 In short, the question before us is whether the legal description in the document entitled "Exhibit A" is part of the agreement. If the answer is yes, the statute of frauds is satisfied and summary judgment for U.S. Eagle is improper on this ground.

¶17 U.S. Eagle "agree[d] to sell the Property on the terms and conditions" contained within the purchase and sale agreement. CP at 19. Those terms included that U.S. Eagle would provide the property's legal description and that Lee and Coats had authority to insert the legal description. U.S. Eagle sought to revoke the agents' authority to attach the description.

¶18 By the terms outlined above, U.S. Eagle contracted that it would not revoke Lee and Coats's authority to insert a legal description. If U.S. Eagle wished to modify this term, it was required to timely contact the Nishikawas with a counteroffer. U.S. Eagle failed to present such counteroffer. U.S. Eagle contends that it had authority to unilaterally void the contract by revoking its agency authority. But U.S. Eagle and the Nishikawas freely entered an agreement and the existence of this agreement precluded agency revoca-

tion. The agreement satisfied the statute of fraud's requirement of attaching a legal description and is enforceable.

Agents' Duties

¶19 U.S. Eagle also asserts that the dual agents violated their duties of loyalty and fair dealing by (1) failing to disclose that a conflict of interest arose after U.S. Eagle informed Windermere that it intended to abandon the deal and (2) adding the legal description, an act that hurt U.S. Eagle's negotiation position and helped the Nishikawas enforce the agreement. U.S. Eagle cites RCW 18.86.060(2)(a)-(b), entitled "Dual Agent—Duties," in its brief. But U.S. Eagle did not sue Windermere or its employees, Lee and Coats. *See* CR 19(a) (mandating joinder of a party if the court cannot afford complete relief in the party's absence). And U.S. Eagle presents no authority, and we have found none, to show that an appropriate remedy for such violations is to rescind the underlying contract when fraud is not alleged. U.S. Eagle cannot raise a claim of breach of a fiduciary relationship in this action, and summary judgment was also inappropriate on this ground.

Meeting of the Minds

¶20 U.S. Eagle next argues that summary judgment was appropriate because the parties did not form a valid and binding contract, theorizing that the Nishikawas did not have a "meeting of the minds" over the issue of environmental indemnification. The Nishikawas argue that the contract contained all necessary terms and that the trial court erred when it denied their motion for summary judgment. We agree with the Nishikawas that, based on this record, there is no genuine issue of material fact regarding the meeting of the minds. But, for reasons discussed below, we decline to grant summary judgment to the Nishikawas.

¶21 U.S. Eagle cites only one case for its "meeting of the minds" argument, *Knight v. American National Bank*, 52 Wn. App. 1, 4, 756 P.2d 757, *review denied*, 111 Wn.2d 1027

(1988). In *Knight*, the court explained that the statute of frauds requires that an agreement to sell real estate must be reduced to a written memorandum that embodies " 'all essential and material parts of the contemplated [agreement] with sufficient clarity and certainty to indicate the parties' meeting of the minds on all material terms with no material matter left for future agreement or negotiation.' " 52 Wn. App. at 4 (quoting *Saunders v. Callaway*, 42 Wn. App. 29, 36, 708 P.2d 652 (1985)). U.S. Eagle asks us to void its contract because Kim wanted an environmental indemnity clause, the term was material to him, and the term is not in the contract.

¶22 Under long-standing contract principles, the record before us shows that the Nishikawas met their burden to demonstrate that there is no genuine issue of material fact regarding whether there was a meeting of the minds. *Atherton*, 115 Wn.2d at 516. First, U.S. Eagle did not allege that it informed the Nishikawas that it wanted an environmental indemnity clause and there is no evidence that the Nishikawas knew the company wanted such a clause until after the contract was complete. Thus, this matter was not " 'left for future agreement or negotiation' " but was, instead, a point never raised. *Knight*, 52 Wn. App. at 4 (quoting *Saunders*, 42 Wn. App. at 36).

¶23 And U.S. Eagle relies on inadmissible extrinsic evidence to add to the contract and to contradict the contract's integration clause, which states that the contract is complete and there are no open terms that it and the Nishikawas left open for negotiation. Absent accident, fraud, or mistake, extrinsic evidence cannot be admitted if it adds to or contradicts the written agreement. *Berg v. Hudesman*, 115 Wn.2d 657, 670, 801 P.2d 222 (1990). U.S. Eagle did not allege accident, fraud, or mistake, and thus extrinsic evidence is inadmissible to contradict the contract. A court's duty is to interpret and give effect to what the parties wrote, not what they intended to write. *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 504, 115 P.3d 262 (2005).

¶24 Further, U.S. Eagle waived the defenses of mistake and misunderstanding by failing to raise them and, on this record, such a defense would fail. Parties have a duty to read the contracts they sign. *Nat'l Bank of Wash. v. Equity Investors*, 81 Wn.2d 886, 912, 506 P.2d 20 (1973). Courts will not casually depart from this principle and our law does not currently exempt a reader who reasonably relies on a translator or interpreter. *Del Rosario v. Del Rosario*, 152 Wn.2d 375, 384-85, 97 P.3d 11 (2004) (reversing, on procedural grounds, Court of Appeal's newly announced rule that one who reasonably relies on a translator or interpreter fulfilled his duty to read a contract).

¶25 In short, the purchase and sale agreement was valid under the statute of frauds and the Nishikawas met their burden to show that no genuine issue of material fact exists.

¶26 But, on the record before us, it is unclear whether the trial court allowed U.S. Eagle to present evidence that material facts are in dispute. The trial court could properly grant summary judgment to the Nishikawas only after allowing U.S. Eagle to present evidence that material facts were in dispute. *Atherton*, 115 Wn.2d at 516. Neither party has provided us with the report of proceedings and the clerk's papers do not contain the trial court's reasoning. In addition, U.S. Eagle asserted several defenses in its answer that are not fully presented in our record. (In its answer to the Nishikawas' complaint, U.S. Eagle asserted the affirmative defenses of CR 12(b)(6), no valid acceptance, no meeting of the minds, indefinite material terms, illusory promise, and inequity of specific performance.) Thus, we deny the Nishikawas' request to enter summary judgment in their favor and instead remand for proceedings in accord with this opinion.

## Availability of Injunctive Relief

¶27 U.S. Eagle also asserts that injunctive relief is not available for the Nishikawas' claim and their damages should be limited to earnest money. The Nishikawas claim

they are entitled to specific performance because they will incur great tax liability unless they purchase this specific property.[3] But this issue is not properly before us because U.S. Eagle does not assign error to a particular trial court decision regarding the Nishikawas' available relief and the record does not reveal any such decision. RAP 10.3(a)(4) (requiring assignments of error); RAP 6.1 (allowing appeal from a trial court's "decision"). We do not address this issue on the merits.

Attorney Fees

¶28 U.S. Eagle asks for attorney fees on appeal under the contract. Whether a party is entitled to attorney fees is an issue of law that we review de novo. *Ethridge v. Hwang*, 105 Wn. App. 447, 460, 20 P.3d 958 (2001). The contract stipulates that the prevailing party in a dispute concerning the agreement is entitled to attorney fees. But U.S. Eagle has not prevailed on this appeal. Moreover, because the prevailing party of this dispute remains to be decided, an attorney fees award is premature at this juncture.

¶29 The trial court awarded U.S. Eagle $10,500 in attorney fees and costs when it granted the company's summary judgment motion. In reversing summary judgment, this award is also necessarily reversed.

¶30 In conclusion, we reverse the grant of summary judgment for U.S. Eagle and the accompanying grant of attorney fees. We affirm the denial of summary judgment for the Nishikawas and remand for further proceedings consistent with this opinion.

BRIDGEWATER and PENOYAR, JJ., concur.

Review denied at 163 Wn.2d 1020 (2008).

---

[3] *Barnett v. Buchan Baking Co.*, 108 Wn.2d 405, 738 P.2d 1056 (1987) (holding specific performance was appropriate to enforce an option to purchase contained in a lease); *Feigenbaum v. Brink*, 66 Wn.2d 125, 131, 401 P.2d 642 (1965) (holding "specific performance will lie to enforce the landlord's duty to repair"); *Carpenter v. Folkerts*, 29 Wn. App. 73, 76, 627 P.2d 559 (1981) ("It is accepted in Washington that a lease containing a lessee's option to purchase is enforceable by specific performance."); *see also* 71 AM. JUR. 2D *Specific Performance* § 168 (2006) ("[E]quity will, in a proper case, exercise its jurisdiction to enforce specific performance of covenants in a lease, the violation of which is not adequately remediable by an action at law.").