# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

ROBERT HOWARD,
)
No. 76025-4-I

)

Appellant,
)

)

v.
)

)

PSSC, INC., d/b/a PUBLIC STORAGE )
SHURGARD STORAGE CENTERS, )
LLC, d/b/a PUBLIC STORAGE; )
JOHN DOE, )
UNPUBLISHED OPINION

)

Respondent. )
FILED: January 17, 2017

)

VERELLEN, C.J. — After Robert Howard defaulted on his monthly self-storage rental unit payment, Public Storage mailed him a notice of lien sale and later sold the contents of the unit to satisfy the lien. Howard sued Public Storage, alleging causes of action for negligence, conversion, replevin, and civil conspiracy. He appeals the summary judgment order dismissing his claims. Because Howard fails to establish any genuine issue of material fact, we affirm.

## FACTS

Robert Howard signed a rental agreement with Public Storage for a self-storage rental unit on September 2, 2014. Howard provided a Port Orchard address on Lincoln Avenue, a telephone number, and an email address for contact, and also provided alternate contact information for Salvie Howard. A "change of physical address" provision in the agreement required that Howard notify Public Storage of any change in

his place of residence or a change in the alternate's name or address within 10 days of the change.[1]

Howard agreed to pay a monthly rental fee of $129 for the storage unit, paid in advance on or before the first of each month, plus additional late fees for late payment. In the event of nonpayment, he agreed that property stored in the unit would be subject to a lien in favor of Public Storage:

> When any part of the Rent or . . . other charges remains unpaid for six (6) consecutive days, Owner may deny Occupant the right to enter the Premises and to access the personal property being stored therein. If Occupant is still in default forty-two (42) days after the date when Rent and/or other charges become due, the Owner may then enforce the lien and the personal property stored in the Premises (except boxes clearly labeled "personal property" and/or "personal effects") may be sold or otherwise disposed of to satisfy the lien. Prior to the lien sale, Owner will mail Occupant lien notices.[2]

Howard initialed this paragraph, acknowledging that he read, understood, and agreed to it.

The agreement further stated, "Occupant agrees that under no circumstances will the total value of all personal property stored in the Premises exceed, or be deemed to exceed, $5,000."[3] Paragraph 5 specifically advised that the storage unit was

> not suitable for the storage of heirlooms or precious, invaluable or irreplaceable property such as, but not limited to, books, records, writings, contracts, documents, personalized or other DVDs or videos, works of art, objects for which no immediate resale market exists, objects which are claimed to have special or emotional value and records or receipts relating to the stored goods.[4]

Howard acknowledged this limitation by initialing the paragraph.

---

[1] Clerk's Papers (CP) at 41.

[2] CP at 40.

[3] CP at 40.

[4] CP at 40.

Paragraph 7 of the agreement further limited Public Storage's liability in the event of loss:

> Owner and Owner's Agents will have no responsibility to Occupant or to any other persons for any loss, liability, claim, expense, damage to property or injury to persons ("Loss") from any cause, including without limitation, Owner's and Owner's Agents['] active or passive acts, omissions, negligence or conversion, unless the Loss is directly caused by Owner's fraud, willful injury or willful violation of law. . . . Occupant agrees that Owner's and Owner's Agents' total responsibility for any Loss from any cause whatsoever will not exceed a total of $5,000.[5]

Howard also initialed this paragraph, acknowledging that he understood it.

On an addendum to the rental agreement, Howard acknowledged his understanding that the company was not responsible for any loss to his property stored on the premises and agreed to insure his property from a third-party insurer. Howard elected to purchase the lowest level of coverage offered, $3,000, for an additional $11.00 per month.

Howard authorized Public Storage to automatically charge his credit card for his monthly rent payment. On December 2, 2014, Howard's credit card payment was declined. Howard does not dispute that he defaulted on his payment to Public Storage.

Public Storage attempted to advise Howard his account was past due by calling both his primary number and his alternate contact's number five times between December 3 and December 31, 2014. Public Storage was unsuccessful. Public Storage also emailed Howard on December 18, 2014. It called Howard and his alternate contact seven more times between January 4 and January 31, 2015. Howard never answered his phone and he did not have his voicemail set up, and he listed a disconnected phone number for his alternate contact.

---

[5] CP at 41.

3

Public Storage sent Howard preliminary delinquency notices on December 31, 2014, January 8, 2015, and January 12, 2015. On January 20, 2015, Public Storage mailed Howard a notice of a lien sale to advise him that it intended to sell the contents of his unit because his account was overdue. Public Storage sent the lien notice to Howard's Lincoln Avenue address via certified, return receipt mail. The United States Post Office returned the unclaimed letter on February 17, 2015 after making three attempts to deliver it.

Public Storage made multiple attempts to contact Howard and his alternate contact by telephone between February 5 and February 19, 2015. It sent two additional emails to Howard on February 8 and February 17, 2015. The morning of the February 20, 2015 public auction, Public Storage made one final attempt to reach Howard or his alternate contact by telephone. Public Storage was again unsuccessful.

Public Storage sold the contents of Howard's storage unit at the auction. It is undisputed that there were no contents labeled "personal papers" or "personal effects."[6] The sale resulted in a credit of $60 to Howard and left a balance of $599.40 due to Public Storage. The purchaser of Howard's unit signed an agreement and a certification of public sale on the date of the sale, requiring the return to Public Storage of "photos, documents (e.g., birth certificates and passports), and other personal items ('Personal Property')."[7] The purchaser never left any contents from the sale behind with Public Storage.

On March 3, 2015, Howard appeared at Public Storage's office and demanded the return of his personal items.

---

[6] CP at 202.

[7] CP at 277-80.

Howard sued Public Storage, asserting causes of action for negligence, conversion, replevin, and civil conspiracy.[8] He immediately filed a motion for order to show cause, requesting an order of replevin and the return of his personal property. The trial court issued an amended order to show cause on April 3, 2015, requiring Public Storage to "immediately return any personal effects as per RCW 19.50.060 to [Howard] should they come into [Public Storage's] possession at any time in the future as per RCW 19.50.060."[9] Thereafter, Public Storage moved for summary judgment on Howard's claims. The trial court granted Public Storage's motion with prejudice.

Howard appeals.

## ANALYSIS

Howard contends the trial court erred by dismissing his claims against Public Storage for negligence, conversion, and civil conspiracy. We review a summary judgment order de novo, engaging in the same inquiry as the trial court.[10] We view the facts and all reasonable inferences in the light most favorable to the nonmoving party.[11] Summary judgment is proper if there are no genuine issues of material fact.[12] "A material fact is one that affects the outcome of the litigation."[13]

Paragraph 7 of Howard's rental agreement contained an exculpatory provision limiting Public Storage's liability unless the occupant's loss was caused by Public

---

[8] Howard also sued the purchaser of the contents of his unit.

[9] CP at 52.

[10] Beaupre v. Pierce County, 161 Wn.2d 568, 571, 166 P.3d 712 (2007).

[11] Fulton v. Dep't of Soc. & Health Servs., 169 Wn. App. 137, 147, 279 P.3d 500 (2012).

[12] CR 56(c); Lowman v. Wilbur, 178 Wn.2d 165, 168-69, 309 P.3d 387 (2013).

[13] Janaszak v. State, 173 Wn. App. 703, 711, 297 P.3d 273 (2013).

Storage's "willful injury or willful violation of law."[14] Howard argues Public Storage willfully violated RCW 19.50.060 resulting in willful injury, but he cites no authority and provides no meaningful analysis in support of his conclusion.

The contract does not define "willful injury" or "willful violation of law." Undefined contract terms are given their plain meaning and are to be read in context of the other contract provisions.[15] The plain meaning of willful injury and willful violation of law both involve more than merely intentionally selling the contents of the storage unit.[16] And those terms must be read in context of other contract provisions imposing obligations upon the renter regarding personal papers and personal effects.[17]

Howard ignores the provision in his rental agreement that required him to segregate and "clearly" label any "personal papers" and "personal effects" stored in the unit.[18] He also ignores the provision that acknowledged the storage unit was "not suitable for the storage of heirlooms or precious, invaluable or irreplaceable property

---

[14] CP at 41.

[15] Queen City Farms, Inc. v. Cent. Nat'l Ins. Co. of Omaha, 126 Wn.2d 50, 77, 882 P.2d 703 (1994) (undefined contract terms are given their "plain, ordinary and popular meaning" which "may be ascertained by reference to standard English dictionaries"); Viking Bank v. Firgrove Commons 3, LLC, 183 Wn. App. 706, 712, 334 P.3d 116 (2014) ("[W]e view the contract as a whole, interpreting particular language in the context of [the] other contract provisions."); Nishikawa v. U.S. Eagle High, LLC, 138 Wn. App. 841, 849, 158 P.3d 1265 (2007) ("Our goal is to interpret the agreement in a manner that gives effect to all the contract's provisions.").

[16] See WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2617 (2002) (defining "willful" as "governed by will without yielding to reason or without regard to reason"); see also Smith v. Behr Process Corp., 113 Wn. App. 306, 327, 54 P.3d 665 (2002) (discovery violation may be deemed willful it if is "done without reasonable excuse"); Rivers v. Washington State Conference of Mason Contractors, 145 Wn.2d 674, 686-87, 41 P.3d 1175 (2002) ("A party's disregard of a court order without reasonable excuse or justification is deemed willful.");

[17] See Viking Bank, 183 Wn. App. at 712; Nishikawa, 138 Wn. App. at 849.

[18] CP at 40.

6

such as, but not limited to, books, records, writings, contracts, documents, personalized or other DVDs or videos, works of art, objects for which no immediate resale market exists," and "objects which are claimed to have special or emotional value."[19] Finally, Howard ignores the provision in the agreement that required him to give Public Storage written notice of a change in address or alternate name, address, and telephone number within 10 days of the change.

Here, it is undisputed that Howard did not segregate and label his personal effects, or provide Public Storage with updated contact information. It is also undisputed that Public Storage made diligent efforts to notify Howard about his default and the lien sale. Under these circumstances and on this briefing, Howard cannot establish a genuine issue of material fact as to any "willful injury or willful violation of law." Therefore, paragraph 7 bars Howard's claims.

Howard also argues the trial court erred in dismissing his claim for replevin because he "already prevailed on his cause of action for replevin," and the resulting order became the law of the case.[20] Howard misstates the nature of the trial court's April 3, 2015 order.

The April 3, 2015 Order on Amended Order to Show Cause did not grant Howard's request for replevin. Rather, it merely ordered Public Storage to return Howard's personal effects if they came into its possession. Washington's replevin statute provides that an order awarding possession shall

---

[19] CP at 40.

[20] Appellant's Br. at 19.

(a) State that a show cause hearing was held; (b) describe the property and its location; (c) direct the sheriff to take possession of the property and put the plaintiff in possession as provided in this chapter; (d) contain a notice to the defendant that failure to turn over possession of the property to the sheriff may subject the defendant to being held in contempt of court upon application to the court by the plaintiff without further notice; (e) if deemed necessary, direct the sheriff to break and enter a building or enclosure to obtain possession of the property if it is concealed in the building or enclosure; and (f) be signed by the judge or commissioner.[21]

Because the April 3, 2015 order did not contain this mandatory language, the order failed to satisfy the requirements of the replevin statute.

Accordingly, we affirm.

WE CONCUR:

---

[21] RCW 7.64.035(2).