[No. 15359. Department Two. August 5, 1919.]

JONES-SCOTT COMPANY, *Appellant,* v. ELLENSBURG MILLING COMPANY, *Respondent.*[1]

FRAUDS, STATUTE OF (37) — SALE OF GOODS — MEMORANDUM—SUFFICIENCY. A written contract satisfying the statute of frauds is shown by correspondence where the seller of wheat wrote confirming a sale of 10,000 bushels of blue stem wheat at $2.44 f. o. b. Eureka Flat points, the buyer to send check of $1,000 as margin, and the buyer, while at first failing to directly acknowledge the contract, wrote about sixty days later that he would take the wheat "bought from you last August if you will give me time," and fixing date for first shipment subject to sight draft.

SALES (129)—ACTIONS FOR PRICE—COMPLAINT—PERFORMANCE OF CONTRACT. A performance of a contract for the sale of wheat and the buyer's refusal to accept are sufficiently shown by a complaint alleging that the seller bought the grain for the purpose of supplying the buyer and held it subject to his order until he repudiated and disavowed the contract and refused to receive it.

SALES (35)—TIME FOR DELIVERY. Where a contract for the sale of wheat does not state the time for delivery, delivery may be made within a reasonable time.

[1]Reported in 183 Pac. 113.

Appeal from a judgment of the superior court for Kittitas county, Davidson, J., entered November 18, 1918, upon sustaining a demurrer to the complaint, dismissing an action on contract. Reversed.

*Gose & Crowe* and *Hovey & Hale,* for appellant.

*Austin Mires* and *Carroll B. Graves,* for respondent.

MOUNT, J.—This action was brought to recover damages because defendant failed and refused to carry out a contract for the purchase of ten thousand (10,000) bushels of wheat. When the original complaint was filed, the defendant demanded, and was furnished with, a bill of particulars setting out the contract relied upon. This bill of particulars consisted of four letters written between the parties, as follows:

"August 13, 1917.

"Ellensburg Milling Company,

"Ellensburg, Washington.      Attention Mr. Helm.

"Gentlemen:

"We confirm sale of 10,000 bushels of Bluestem on the 11th at $2.44, f. o. b. cars Eureka Flat points, understanding that we are to carry you on this wheat at 7 per cent and you to send us your check of $1,000 as margin and as per our phone conversation with you Saturday morning you were to have sent us the check that day. As the mail did not bring it in we suppose you overlooked this. Kindly mail us your check and oblige,          Yours very truly,

"Jones-Scott Co.,

"(Signed)   By H. B. Kershaw."

"August 27, 1917.

"Ellensburg Milling Company,

"Ellensburg, Washington      Attention Mr. Helm.

"Gentlemen:

"When you were here little over a week ago, you advised that you would remit us $1,000 on account in three days or by Wednesday of last week. We have

put out something over $24,000 for your account and we think it is up to you to mail us this check.

"Yours very truly,
"Jones-Scott Co.,
"(Signed)   By H. B. Kershaw."

"Jones-Scott Co.,                          August 28, 1917.
"Walla Walla, Wash.

"Gentlemen:   Regarding the $1,000, there was a note of $3,000 due which we cleaned up, and we cannot pay the $1,000 at this time. We have not made arrangements for handling the new crop yet, as our banker is out of town. We will pay this, however, at the earliest possible moment.     Yours very truly,

"Ellensburg Milling Co.
"(Signed)   By Helm."

"Jones-Scott Co.,                          October 13, 1917.
"Walla Walla, Wash.

"Gentlemen:   If you will give me time I will take the wheat bought from you in August. You can ship one car about November 1st and draw sight draft. Will take balance as fast as I can.

"Ellensburg Milling Co.
"(Signed)   By Helm."

After this bill of particulars was filed, the trial court sustained a general demurrer to the complaint. The plaintiff thereupon filed an amended complaint substantially the same as the original. The trial court sustained a general demurrer to this amended complaint; plaintiff elected to stand upon the allegations thereof, and the action was dismissed. Plaintiff has appealed.

It is argued by the respondent that the writings set forth above, relied upon by the appellant, do not constitute an enforceable agreement under the statute of frauds, for the reason that no memorandum was signed by the respondent containing the terms of the alleged contract, nor were the terms contained in the writings signed by the appellant ever accepted or agreed to in

writing by the respondent. There can be no doubt of the rule that a written contract may be gathered from letters passing between the parties. *Underwood v. Stack,* 15 Wash. 497, 46 Pac. 1031.

As was said in *Ryan v. United States,* 136 U. S. 68, at page 83:

"The principle is well established that a complete contract binding under the statute of frauds may be gathered from letters, writings and telegrams between the parties relating to the subject matter of the contract, and so connected with each other that they may be fairly said to constitute one paper relating to the contract."

Referring now to these letters: The first one, dated August 13, 1917, from Jones-Scott Company to Ellensburg Milling Company, said:

"We confirm sale of 10,000 bushels of Blue stem on the 11th at $2.44, f. o. b. cars Eureka Flat points, understanding that we are to carry you on this wheat at 7 per cent and you to send us your check of $1,000 as margin . . ."

Two weeks later, on August 27, the Jones-Scott Company again wrote to the Ellensburg Milling Company, saying:

"When you were here little over a week ago you advised that you would remit us $1,000 on account in three days or by Wednesday of last week. We have put out something over $24,000 for your account and we think it is up to you to mail us this check."

Upon the next day, the Ellensburg Milling Company answered that letter, saying:

"Regarding the $1,000, there was a note of $3,000 due which we cleaned up, and we cannot pay the $1,000 at this time. We have not made arrangements for handling the new crop yet, as our banker is out of town. We will pay this, however, at. the earliest possible moment."

Up to this point there was apparently no acknowl-
edgment of the alleged contract by the Ellensburg
Milling Company, though there is a statement evidently
referring to the letter of the Jones-Scott Company,
written the day before, in which they agree to pay the
$1,000 therein mentioned at the earliest possible mo-
ment. Two months thereafter, the Ellensburg Milling
Company wrote to the Jones-Scott Company, saying:

"If you will give me time I will take the wheat
bought from you in August. You can ship one car
about November 1st and draw sight draft. Will take
balance as fast as I can."

We think there can be no doubt that this letter refers
to the contract mentioned by the Jones-Scott Company
on August 13. If this letter had been dated the next
day, or within a few days after August 13, there could
be no escape from the conclusion that it referred to
that letter and was in answer to it; for it says: "I will
take the wheat bought from you in August." The re-
spondent, in reference to this letter, says that it makes
no reference to the memorandum of appellant of
August 13 and accepts no terms proposed by the appel-
lant, but makes a counter proposition which appellant
seems to have turned down, as it is not again referred
to. The only counter proposition which we gather
from this letter is contained in the words, "if you will
give me time." By the letter of August the 13th from
the Jones-Scott Company to the Ellensburg Milling
Company, time was provided for, and we think this
letter of October the 13th makes no change in the terms
of the contract and expressly accepts the terms re-
ferred to in the letter of August 13. We are of the
opinion, therefore, that these two letters taken together
constituted a complete contract between these parties
sufficient to take the contract without the statute of
frauds. The intervening letters of August 27 and 28,

while not directly acknowledging the contract, did not accept it. The one dated the 28th in substance stated that respondent was not ready at that time to pay the thousand dollars or to receive the grain. The letter of October 13 expressly acknowledges the contract—"If ·you will give me time   .   .   ." These two letters clearly made a contract between the parties with all the necessary terms and conditions.

Respondent further argues that the complaint does not show a performance of the contract or tender of performance. Upon this question the amended complaint alleges that appellant bought the ten thousand bushels of blue stem wheat at Eureka Flat points, in Walla Walla county, for the purpose of supplying respondent therewith upon its demand therefor; that appellant held the grain subject to respondent's demand therefor at that place until respondent, on the 7th day of January, 1918, repudiated and disavowed the contract and refused further to be bound thereby or to receive the wheat. This allegation was clearly sufficient to show that the appellant purchased and held the wheat for the respondent and that respondent refused to accept it. It is true the contract set out in these letters does not state the time at which the wheat should be delivered, but where no time is stated in the contract delivery may be made within a reasonable time. *Menz Lumber Co. v. McNeeley & Co.*, 58 Wash. 223, 108 Pac. 621, 28 L. R. A. (N. S.) 1007.

We are satisfied that the complaint stated a cause of action and that the trial court was in error in sustaining the demurrer.

The judgment appealed from is therefore reversed, and the cause remanded for further proceedings.

HOLCOMB, C. J., PARKER, FULLERTON, and BRIDGES, JJ., concur.