[No. 3035-1. Division One. March 22, 1976.]

ALASKA INDEPENDENT FISHERMEN'S MARKETING ASSOCIATION, *Appellant*, v. NEW ENGLAND FISH COMPANY, *Respondent*.

*Victor V. Hoff*, for appellant.

*Bogle & Gates, Peter D. Byrnes*, and *James A. Smith, Jr.*, for respondent.

SWANSON, J.—The Alaska Independent Fishermen's Marketing Association ("AIFMA"), appeals from a summary judgment dismissing its breach of contract action against New England Fish Company ("NEFCO").

---

AIFMA is one of two fish-marketing associations active in the Bristol Bay, Alaska, fishery, the other being the Western Alaska Co-operative Marketing Association ("WACMA"). AIFMA is primarily involved in negotiating agreements with packing companies on behalf of its fishermen-members, most of whom reside in Washington, Oregon, and California. AIFMA's members are independent fishermen who either own or lease their boats, as distinguished from "company" fishermen, who are employed by a cannery. About 48 of AIFMA's total membership of 275 fished for NEFCO during the relevant time period. NEFCO is one of approximately 10 companies operating salmon canneries at Bristol Bay.

AIFMA brought this action on behalf of itself and its fishermen-members, alleging in essence that NEFCO breached their 1969-70 marketing agreement and that the breach prevented each of AIFMA's members from catching and delivering an additional 25,000 fish to NEFCO. The specific breaches alleged included (1) imposing a 2,000-fish limit on the number of salmon AIFMA's members were permitted to catch and deliver during each consecutive 24-hour period; (2) imposing limits on the number of fish AIFMA members were permitted to catch and deliver, while accepting fish from other sources; and (3) suspending the fishing by AIFMA's members while not operating at maximum capacity—all in violation of the alleged marketing agreement between AIFMA and NEFCO. The trial court preliminarily determined that the alleged marketing contract providing for the sale of fish to NEFCO, which furnishes the basis for AIFMA's action, is a "contract for sale" within the purview of RCW 62A.2-725 (4-year statute of limitations) and subject to the Uniform Commercial Code statute of frauds, RCW 62A.2-201. After considering voluminous depositions, affidavits, exhibits, and extensive argument at multiple hearings, the court concluded

there is no sufficient quantity term specified in any writing signed by defendant nor in any unsigned writings incorporated into any signed writings and that therefore

the alleged contract is unenforceable under RCW 62A.2 or any of its provisions and particularly under RCW 62A.2-201(1) . . .

and ordered AIFMA's complaint dismissed. AIFMA's motion for reconsideration was denied, and this appeal follows.[1]

A review of the pertinent facts is necessary to an understanding of the primary issue presented by this appeal: whether a question of material fact remains as to the existence of an enforceable contract of sale between the parties when the evidence presented is tested by the rules governing a summary judgment proceeding. Resolution of that question depends upon whether the "quantity of goods" is sufficiently specified in the writings upon which the plaintiff relies.

It is not disputed that on July 2, 1969, representatives of AIFMA and NEFCO met at Bristol Bay to negotiate a marketing agreement for the 1969-70 fishing seasons, prior negotiation efforts having failed. At this meeting NEFCO's agent, Jay Gage, signed a paper, consisting of one page removed from a WACMA form marketing agreement, which designated fish prices and methods of weighing fish. This document refers to the prices which the buyer was to pay during the 1969-70 seasons for fish purchased "under the terms and conditions of this agreement," but omits any mention of the quantity of fish to be purchased. Mr. Gage also wrote out and signed an agreement relating to room and board for AIFMA members during the 1969 season. In a December 1969 signed letter to fishermen, NEFCO stated that it had contracts "which include fish prices and conditions" with both WACMA and AIFMA for the 1970 season. In January 1970, members of AIFMA received from

---

[1] AIFMA's notice of appeal states in pertinent part, "Alaska Independent Fishermen's Marketing Association appeals . . . from the judgment entered . . . on April 24, 1974 . . ." The record discloses that the judgment dismissing AIFMA's complaint was entered on April 23, 1974, rather than on the date specified in the notice of appeal; however the notice was timely filed on the twenty-ninth day, May 22, 1974.

NEFCO a signed "Individual Fishing Agreement" which began, "The Marketing Agreement between [AIFMA] and [NEFCO] shall be applicable . . . ," and NEFCO stated in a signed letter to AIFMA, "We have an agreement for the 1970 season with your Association in all respects, with the exception of the subject of room and board. This subject of room and board was to be reviewed for the 1970 season." No evidence was presented that NEFCO ever signed a complete marketing agreement or any other writing mentioning quantity for the 1969-70 seasons, but AIFMA makes the claim that both parties assumed that the traditional provisions of the standard form marketing agreement executed in previous years were applicable for the 1969-70 seasons and that it was orally adopted.

 Except as otherwise provided therein, RCW 62A.2-201[2] bars the enforcement of a contract for the sale of goods for the price of $500 or more

> unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

Consequently, the critical requirements of a contract of sale under the UCC statute of frauds are that the writing evidence a sale of goods, that it be signed, and that it specify quantity. *Hankins v. American Pac. Sales Corp.,* 7 Wn. App. 316, 319, 499 P.2d 214 (1972); *Southwest Eng'r Co. v. Martin Tractor Co.,* 205 Kan. 684, 473 P.2d 18 (1970). AIF-

---

[2]There is no contention on appeal that resort should be made to law other than that of Washington. We do not reach any choice of law issue, even though the alleged contract was negotiated, executed, and performed in Alaska. "[W]here the law of a sister state is not pleaded and proved, it will be presumed that it is the same as the law of the forum. In this state the presumption embraces statutes as well as the common law." *Nissen v. Gatlin,* 60 Wn.2d 259, 261, 373 P.2d 491 (1962); *Investment Serv. Co. v. LaLonde,* 63 Wn.2d 834, 836-37, 389 P.2d 414 (1964).

MA's argument is essentially that one or more of the writings signed by NEFCO incorporate the unsigned form marketing agreement, thereby supplying the requisite quantity term.

We recognize that the writing required to satisfy the statute is not limited to the single piece of paper signed by the party to be bound; it may be evidenced by several writings, but the documents used must be clearly related. The problem of ascertaining what is necessary to permit a reading together of several writings to establish the existence of a single memorandum is discussed in R. Duesenberg & L. King, *Sales and Bulk Transfers Under the Uniform Commercial Code* § 2.04[2], at 2-51 to 2-54 (3 *Bender's Uniform Commercial Code Service*, 1975), where it is stated that the generally accepted view of the doctrine of incorporation by reference is as expressed in *Grant v. Auvil*, 39 Wn.2d 722, 238 P.2d 393 (1951). *See also Cargill, Inc. v. Wilson*, 166 Mont. 346, 532 P.2d 988 (1975). The *Grant* case involved a printed form containing all the essential terms to complete the bargain except for the signature of either party. About 6 months later the defendant buyer sent to the seller a signed letter asking him to "please cancel [his] order." *Grant v. Auvil, supra* at 724. The court ruled that because the signed memorandum canceling the order contained nothing on its face to indicate that the "order" referred to was the written order indicated on the face of the unsigned memorandum, they could not be read together. The court stated the rule of incorporation in its classic form at page 724:

> In order to satisfy the requirements of [the statute], the note or memorandum may consist of several writings, though the writing containing the requisite terms is unsigned, if it appears from an examination of all the writings that the writing which is signed by the party to be charged was signed with the intention that it refer to the *unsigned writing*, and that the writings are so connected by *internal reference* in the signed memorandum to the unsigned one, that they may be said to constitute one paper relating to the contract.

The *Grant* court said in disposing of the case at page 726,

> If the signed memorandum makes no reference to the unsigned memorandum, they may not be read together. Parol evidence is inadmissible to connect them. . . .
>
> Here, we have nothing to indicate that the postal card refers to an extrinsic writing. It does not identify the unsigned written memorandum of October 12, 1949, nor does it identify any of its terms. . . . To conclude otherwise would be to subvert the spirit of the statute.

(Citations omitted.) This passage demands that the signed writing expressly refer to the unsigned writing. Shattuck, *Contracts in Washington*, 34 Wash. L. Rev. 345, 368 (1959).[3]

A careful review of the signed writings indicates no internal reference to any unsigned writings. We reject AIFMA's contention that the signed, single-page agreement between AIFMA and NEFCO, consisting of one page removed from a WACMA form agreement, incorporates by reference the terms of that document. The fact that the parties removed only one page from the form agreement, instead of adopting the entire agreement, supports an inference contrary to AIFMA's position. Neither the letter from NEFCO to AIFMA nor the letters from NEFCO to AIFMA fishermen make any reference identifying a specific writing. Consequently, these letters cannot be said to contain an internal reference to the unsigned extrinsic form contract sought to be included. Parol evidence is inadmissible to connect them; if it were admitted to connect the unsigned writing which contains the terms there would be nothing but parol evidence to show NEFCO's assent to the quantity term as written. *Grant v. Auvil, supra* at 726-27. It is true, as we stated in *Hankins v. American Pac. Sales Corp.,* *supra* at 319, that "[w]hen quantity is not precisely stated, parol evidence is admissible to show what the parties intended as the exact quantity," *Riegel Fiber Corp. v. Anderson Gin Co.*, 512 F.2d 784, 790 n.15 (5th Cir. 1975); *Port*

[3]Professor Shattuck is critical of the *Grant* rule as overtechnical and in conflict with the position taken in an earlier Washington case, *Jones-Scott Co. v. Ellensburg Milling Co.*, 108 Wash. 73, 183 P. 113 (1919).

*City Constr. Co. v. Henderson*, 48 Ala. App. 639, 266 So. 2d 896 (1972); *Fort Hill Lumber Co. v. Georgia-Pacific Corp.*, 261 Ore. 431, 493 P.2d 1366 (1972), but where the writing relied upon to form the contract of sale is totally silent as to quantity, parol evidence cannot be used to supply the missing quantity term, *see Huyler Paper Stock Co. v. Information Supplies Corp.*, 117 N.J. Super. 353, 284 A.2d 568, 573 (1971).[4] In the instant case there is no quantity provision in any writing between the parties to furnish the basis for an explanation by parol evidence.

■ AIFMA makes the additional argument that the quantity requirement of the UCC statute of frauds does not apply because the only quantity involved in the contract is the fishermen's catch, and not a specific numerical quantity of goods. We disagree. RCW 62A.2-201 applies to any "contract for the sale of goods for the price of five hundred dollars or more . . ." irrespective of whether it is a contract for output, requirements, or a specific amount.[5] *See* RCW 62A.2-306; Cosway, *Sales—A Comparison of the Law in Washington and the Uniform Commercial Code*, 35 Wash. L. Rev. 412, 431-32 (1960). An output contract for the purchase of all of the defendant's cotton produced on 825 acres was found to be subject to the UCC statute of frauds in *Harris v. Hine*, 232 Ga. 183, 205 S.E.2d 847 (1974).

Finally, appellant argues that the summary judgment proceeding was premature because of the absence of a formal answer. This contention is without merit. CR 56(b).

The trial court correctly determined that the failure to

---

[4] RCW 62A.2-202 makes evidence as to course of dealing, trade usage and course of performance admissible *to aid* in interpreting an integrated agreement even though it is unambiguous on its face. As stated in Official Comment, RCWA 62A.2-202, "If the additional terms are such that, if agreed upon, they would certainly have been included in the document in the view of the court, then evidence of their alleged making must be kept from the trier of fact."

[5] For a collection of cases discussing what transactions are within article 2, see Annot., 17 A.L.R.3d 1010, 1047-52 (1968).

specify quantity rendered the alleged contract unenforceable.

Judgment affirmed.

FARRIS and CALLOW, JJ., concur.

Petition for rehearing denied June 30, 1976.