189 P.3d 253 (2008)
HOME REALTY LYNNWOOD, INC., d/b/a John L. Scott, Plaintiff Interpleader,
v.
John R. WALSH, Jr. and Marcy W. Walsh, Respondents, and
Jae Won Lee and Mi Ja Lee, Appellants.
No. 60821-5-I.
Court of Appeals of Washington, Division 1.
August 4, 2008.
*254 Randy Barnard, O'Shea Barnard Martin PS, Bellevue, WA, for Appellants.
David Carr Kelly, Peterson Russell Kelly PLLC, Bellevue, WA, Courtney Arin Williams, Attorney at Law, Seattle, WA, for Respondents.
LAU, J.
¶ 1 The real estate statute of frauds, RCW 64.04.010, requires that a contract for the sale of land must describe the land by legal description sufficient to locate the land without recourse to oral testimony. In this earnest money deposit dispute between buyers *255 Jae Won and Mi Ja Lee and sellers John and Marcy Walsh, the trial court found that the residential purchase and sale agreement satisfied this requirement based entirely on oral testimony that the parties intended to attach the legal description by faxing and placing the documents together in the same file folder. Because we adhere to Washington's strict rule against recourse to oral testimony in determining whether a legal description satisfies the statute of frauds, we reverse the trial court's order granting the Walshes' summary judgment motion. We also remand to address the Walshes' restitution and attorney fee claims.

FACTS
¶ 2 In spring 2006, the Lees offered to purchase the Walshes' home in Bellevue. The Lees and the Walshes were represented by real estate agents from different offices of John L. Scott Realty. The parties negotiated a purchase price of $1,550,000 and entered into a residential purchase and sale agreement on March 31, 2006. They added language to the agreement stating that the standard financing contingency "shall be deemed waived 20 days after mutual acceptance unless selling agent gives listing agent a letter from the lender stating why buyers loan was not approved." The Lees tendered a $50,000 personal check to John L. Scott on April 4, 2006, to be held in escrow as the earnest money deposit. The agreement also contained a forfeiture clause entitling the Walshes to retain the deposit if the Lees wrongfully failed to close.
¶ 3 It is undisputed that the purchase and sale agreement did not include a legal description of the real property. But the agreement did contain boilerplate language authorizing "Selling Licensee, Listing Agent or Closing Agent to insert, attach or correct the Legal Description of the Property." (Emphasis added.) Ki Kim, the Lees' real estate agent, testified that the Walshes' agent, Carrie Lord, delivered by courier a preliminary commitment for title insurance to his office on or before March 31, 2006. Kim explained that the preliminary commitment for title insurance included a copy of the statutory warranty deed containing the legal description. He also testified that he faxed the purchase and sale agreement and the statutory warranty deed back to Lord as part of the counteroffer.[1] Kim described that all of the documents related to the transaction, including the statutory warranty deed, were contained in a "kind of big book" or "whole packet of stuff." Clerk's Papers (CP) at 148.
¶ 4 Kim's employer and the owner of John L. Scott Lynnwood West, James Fultz, testified that a copy of the seller's statutory warranty deed containing the legal description was placed in the same file folder as the purchase and sale agreement. Fultz said that this was his "normal procedure," that "[w]e consider that the manila folder attaches it," and that "[i]f it's in the file, it's attached." Fultz admitted that he did not consider all of the documents contained in that file to be "attached" to the purchase and sale agreement. Fultz also testified that there was no doubt in his mind as to the identity of the real property subject to the purchase and sale agreement.
¶ 5 The transaction failed to close. The financing contingency deadline passed on April 20, 2006, and the Lees did not provide a letter from their lender as required by the purchase and sale agreement. Four days later, the Lees executed a rescission of the purchase and sale agreement directing that their earnest money deposit be returned. The Walshes refused to sign it.
¶ 6 On June 21, 2006, Home Realty Lynnwood, Inc. (d/b/a John L. Scott Lynnwood West) filed an interpleader complaint under CR 22 and deposited the $50,000 earnest money with King County Superior Court. The Walshes filed an interpleader answer *256 and counterclaim requesting an award of earnest money and attorney fees.
¶ 7 On October 12, 2007, the trial court granted the Walshes' motion for summary judgment.[2] The court acknowledged that no legal description was stapled to the purchase and sale agreement. The court noted Kim's undisputed testimony that the statutory warranty deed containing the legal description was "part of the `whole package'" and that it was contained in a "`kind of big book'" with the purchase and sale agreement.[3] The court also noted Fultz's undisputed testimony that the legal description was in the file with the purchase and sale agreement and that Fultz considered it to be "attached." Relying on this evidence, the court reasoned that the statute of frauds was satisfied because
[t]here is no argument that there was any confusion which piece of property was being sold here. Thus, the motion turns on whether the parties intended the word "attached" to mean physically stapled, or included in the file and "big book" of documents. If the Lees intended to show the former, they could have presented evidence establishing the same, but the uncontroverted evidence shows that the parties intended the latter.
The Lees appealed.

ANALYSIS
¶ 8 The Lees did not move for summary judgment below. Rather, in response to the Walshes' motion for summary judgment, they requested that the court enter summary judgment in their favor. Summary judgment may be granted to the nonmoving party "if it becomes clear that he or she is entitled thereto" and the original moving party has had an adequate opportunity to present materials and argument in rebuttal. 14A KARL B. TEGLAND, WASHINGTON PRACTICE: CIVIL PROCEDURE § 25.13, at 100 (2003). This court reviews summary judgment orders de novo and engages in the same inquiry as the trial court. Jones v. Allstate Ins. Co., 146 Wash.2d 291, 300, 45 P.3d 1068 (2002). Summary judgment will be affirmed if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Huff v. Budbill, 141 Wash.2d 1, 7, 1 P.3d 1138 (2000).

Statute of Frauds
¶ 9 The Lees argue that the trial court erred by relying on oral testimony to establish whether the legal description was "attached," as expressly permitted under the purchase and sale agreement. Therefore, the purchase and sale agreement is void and unenforceable in violation of the statute of frauds. The Walshes contend that the deposition testimony of Kim and Fultz established that the two documents were intentionally "attached" by (1) faxing a copy of the statutory warranty deed along with the counteroffer and (2) placing the two documents in the same file folder.
¶ 10 The statute of frauds for real property provides, "Every conveyance of real estate, or any interest therein, and every contract creating or evidencing any encumbrance upon real estate, shall be by deed. . . ." RCW 64.04.010. The long-established rule in Washington is that to comply with the statute of frauds, the writing must contain a legal description of the property by lot and block number, addition, city, county, and state. Martin v. Seigel, 35 Wash.2d 223, 229, 212 P.2d 107 (1949). The instrument must contain a description sufficient to locate the land without recourse to oral testimony or contain a reference to another instrument which does contain a sufficient description. Ecolite Mfg. Co. v. R.A. Hanson Co., 43 Wash.App. 267, 270, 716 P.2d 937 (1986). The legal description need not be written in the real estate contract at the time of signing, provided that it expressly authorizes an agent to later fill in the legal description and the agent does so. Noah v. Montford, 77 *257 Wash.2d 459, 463 P.2d 129 (1969); Edwards v. Meader, 34 Wash.2d 921, 210 P.2d 1019 (1949); Nishikawa v. United States Eagle High LLC, 138 Wash.App. 841, 848 n. 2, 158 P.3d 1265 (2007).
¶ 11 Washington's rule is "the strictest in the nation. . . . In most states an incomplete description or a street address is sufficient, and parol evidence may be received to locate the land. Not so in Washington." 18 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS § 16.3, at 225 (2d ed. 2004).
We do not apologize for the rule. We feel that it is fair and just to require people dealing with real estate to properly and adequately describe it, so that courts may not be compelled to resort to extrinsic evidence in order to find out what was in the minds of the contracting parties.
Martin, 35 Wash.2d at 228, 212 P.2d 107.[4]
¶ 12 Whether one may "attach" a legal description to a purchase and sale agreement by faxing the two documents together or placing them in the same file folder, thereby satisfying the statute of frauds, is an issue of first impression in Washington. But we need not address this question because the only evidence in our record connecting the purchase and sale agreement with the statutory warranty deed containing the legal description was the deposition testimony of Kim and Fultz.[5] The purchase and sale agreement itself did not contain a legal description or any other reference connecting it to the statutory warranty deed containing the legal description. The "kind of big book" described by Kim and the file folder described by Fultz are not part of our record.[6] Nor does the record contain a fax coversheet or other evidence of physical attachment.
¶ 13 The Walshes argue that separate documents may be "attached" by placing them in the same file because "[c]ompliance with the statute of frauds is not limited to a single, signed piece of paper, but may be evidenced by several documents clearly related." Knight v. Am. Nat'l Bank, 52 Wash.App. 1, 5, 756 P.2d 757 (1988) (citing Alaska Indep. Fishermen's Mktg. Ass'n v. New England Fish Co., 15 Wash.App. 154, 158, 548 P.2d 348 (1976) [hereinafter AIFMA] and Grant v. Auvil, 39 Wash.2d 722, 724-25, 238 P.2d 393 (1951)). According to the Walshes, the trial court properly relied on the deposition testimony of Kim and Fultz to establish that the two documents were "clearly related" for the purpose of defeating the statute of frauds.
¶ 14 We disagree. There is nothing in Knight creating an exception to the strict bar on oral testimony in satisfying the statute of frauds. The AIFMA court reiterated the rule that bars reliance on parol evidence to satisfy the statute of frauds. "`If the signed memorandum makes no reference to the unsigned memorandum, they may not be read together. Parol evidence is inadmissible to connect them. . . . To conclude otherwise would be to subvert the spirit of the statute.'" AIFMA, 15 Wash.App. at 159, 548 P.2d 348 (quoting Grant, 39 Wash.2d at 726, 238 P.2d 393). Additionally, Knight is factually distinguishable. There, the court held that a lease agreement lacking an adequate legal description satisfied the real estate statute of frauds because the agreement explicitly referred to and incorporated by reference a site plan containing the legal description. But here, the purchase and sale agreement did not refer to and incorporate the statutory warranty deed or any other document containing the legal description.
*258 ¶ 15 The Walshes further argue that because knowledge of an agent acting within the scope of authority is imputed to the principal, Goodman v. Boeing Co., 75 Wash. App. 60, 85, 877 P.2d 703 (1994), the Lees are bound by their agent's knowledge, intent, and conduct in "attaching" the two documents by placing them in the same file. We reject this argument because extrinsic evidence is required to establish the agent's knowledge, intent, and conduct. A real estate agent cannot alter the law applicable to the principal through actions based on a well-intentioned but erroneous misunderstanding of the law.
¶ 16 We conclude that the trial court erred in ruling that the statute of frauds was satisfied based solely on oral testimony of the parties' intent to "attach" the purchase and sale agreement and statutory warranty deed. This ruling plainly contravened Washington's well-established strict rule against recourse to oral testimony in satisfying the statute of frauds. Although the court faulted the Lees for failing to submit competing evidence regarding the parties' intent, in Washington, the legal description must be sufficiently adequate to avoid the need to examine intent.

Restitution
¶ 17 The Walshes argue that even if the purchase and sale agreement does not comply with the statute of frauds, they are still entitled to retain the earnest money because the Lees defaulted and the Walshes remained ready, willing, and able to sell the house to them. Although the Washes raise this argument for the first time on appeal, it is not an assignment of error but rather an alternate ground for affirming the trial court. The appellate court may affirm the trial court on any theory supported by the record, even if the trial court did not consider it. RAP 2.5(a); Mendez v. Palm Harbor Homes, Inc., 111 Wash.App. 446, 460-61, 45 P.3d 594 (2002).
¶ 18 "Washington's rule is that, even if a contract for the sale of land is unenforceable because it does not satisfy the statute of frauds, a purchaser may not obtain restitution of his earnest money if the vendor is ready, willing, and able to perform as agreed." 18 STOEBUCK & WEAVER, supra, at 250 (citing Schweiter v. Halsey, 57 Wash.2d 707, 359 P.2d 821 (1961) and Dubke v. Kassa, 29 Wash.2d 486, 187 P.2d 611 (1947)). This is the general rule followed by a great majority of other jurisdictions. See 169 A.L.R. 187 (2008). The rationale is that "a purchaser should not be allowed to use his own breach to escape his contractual obligationsin effect, to have an election not to perform what he has agreed to do." 18 Stoebuck & Weaver, supra, at 250.
It has been said that the purpose of the statute, so far as it relates to the sale of land, is to protect the vendor only, and that the vendee, seeking to recover purchase money, cannot set up the statute against a vendor who is ready and willing to perform, and the contract cannot be considered void so long as the vendor, for the protection of whose rights the statute exists, is willing to treat and consider the contract good.
73 Am.Jur.2d Statute of Frauds § 450 (2008).
¶ 19 The Lees attempt to distinguish Schweiter to argue that the rule does not apply to this case. There, the parties entered into an agreement for the sale of tillable pasture land and executed an earnest money receipt which failed to include a legal description. Schweiter, 57 Wash.2d at 708, 359 P.2d 821. The buyers subsequently refused to sign the papers and sought rescission of the agreement. The sellers promptly tendered performance, which the buyers refused. The trial court ruled that the earnest money agreement was void in violation of the statute of frauds and entered judgment against the buyers. Id. at 709, 359 P.2d 821. The Washington Supreme Court agreed that the earnest money agreement was void and unenforceable, but nevertheless held that the buyers were not entitled to a return of their earnest money because the sellers did not repudiate the contract but rather tendered performance and did not dispose of the property until after the buyers commenced legal action. Id. at 710-11, 359 P.2d 821.
¶ 20 The Lees argue that Schweiter is distinguishable because there, the earnest money was in the seller's possession, whereas here, the Lees' earnest money deposit was *259 placed in escrow and is now being held by the court. Therefore, the earnest money remained their property and the sellers could not claim it without a right of action for recovery. And because the only conceivable source of such a right would be the purchase and sale agreement, which is void and unenforceable under the statute of frauds, the buyers retain ownership and have the right to withdraw it from escrow. We disagree. There is nothing in Schweiter indicating that the court's decision was based on the identity of the party holding the earnest money. Furthermore, this is not a meaningful distinction because the rule generally applies even if the earnest money is in the hands of a third person. 73 Am.Jur.2d Statute of Frauds § 450 (2008).
¶ 21 The Lees also seek to distinguish Schweiter because in that case, the record conclusively established that the sellers remained ready, willing, and able to perform following the breach, whereas here, the Walshes are unable to point to anything in the record demonstrating that they met this standard. On this point, the Lees are correct. The record before us is devoid of conclusive evidence that the Walshes remained ready, willing, and able to perform after the Lees' breach. Therefore, we decline to consider this alternate ground and remand to the trial court for further proceedings.
¶ 22 Both parties request an award of attorney fees pursuant to RAP 18.1(a), which permits an award of fees where "applicable law grants to a party the right to recover reasonable attorney fees or expenses on review.. . ." Here, the purchase and sale agreement between the Lees and Walshes provides, "If Buyer or Seller initiates suit against the other concerning this Agreement, the prevailing party is entitled to reasonable attorneys' fees and expenses." Because further proceedings are necessary, a determination of the prevailing party is premature.
¶ 23 In sum, we reverse the trial court's summary judgment order and hold that the purchase and sale agreement is void in violation of the statute of frauds. We also remand to the trial court for a determination of whether restitution and attorney fees are available.
WE CONCUR: DWYER, A.C.J., and BECKER, J.
NOTES
[1] Although Kim's deposition testimony is unclear, he asserts that Lord also faxed the purchase and sale agreement and statutory warranty deed to him at some point during the process. The purchase and sale agreement in our record is printed with information indicating that it was faxed either to or from Lord on March 31, 2006. However, the copy of the statutory warranty deed in our record shows no evidence of having been faxed. Nor does the record contain a fax coversheet that might link the two documents.
[2] We have omitted a detailed discussion of the motions practice in this case because it is not relevant to the issues before us on appeal.
[3] The trial court's summary judgment order apparently confused Mr. Lee with his agent, Mr. Kim. The order erroneously stated that the court was "presented with undisputed testimony from Mr. Lee" although it then correctly attributed the substance of the testimony to the deposition of Kim. CP at 194. This error has no effect on our analysis.
[4] See also Key Design, Inc. v. Moser, 138 Wash.2d 875, 883, 983 P.2d 653 (1999) (expressly reaffirming Martin and rejecting appellant's contention that "this strictness is harmful or detrimental").
[5] We further note that although the statutory warranty deed was apparently an exhibit to Kim's deposition, the deed was never made part of the record below. RAP 9.12 provides, "On review of an order granting or denying a motion for summary judgment the appellate court will consider only evidence and issues called to the attention of the trial court. . . ." Its inclusion in the clerk's papers before us was improper.
[6] Whether Kim's testimony about the "whole packet of stuff" and "kind of big book" is a reference to the file identified by Fultz or a separate compilation of documents is unclear. But the distinction is not central to our decision.