FILED
COURT OF APPEALS
DIVISION II

2013 SEP 17 AM 8: 40

[STATE] OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| OAKRIDGE HOMES II, LTD., a Washington corporation, | No. 43030-4-II |
| Appellant, | UNPUBLISHED OPINION |
| v. | |
| FIRST-CITIZENS BANK & TRUST COMPANY, a North Carolina banking association, | |
| Respondent. | |

BJORGEN, J. — Oakridge Homes II, Ltd. sued First-Citizens Bank and Trust Company for specific performance or damages after a real estate transaction between the two parties failed to close. The deal failed after First-Citizens, the prospective seller, refused responsibility for school district impact mitigation fees associated with 19 undeveloped parcels involved in the transaction. Oakridge moved for partial summary judgment, requesting a determination that First-Citizens bore responsibility for the impact fees. First-Citizens filed a cross motion for summary judgment, requesting dismissal of the lawsuit. The trial court denied Oakridge's motion and granted First-Citizens' motion on the ground that the lack of an adequate legal description in the purchase and sale agreement rendered the contract void under the statute of frauds. Holding that the agreement contained an adequate legal description, we reverse and remand for further proceedings.

FACTS

In September 2009, First-Citizens purchased a majority of the assets of Venture Bank's assets from the Federal Deposit Insurance Corporation. These assets included a promissory note secured in part by the unimproved lots at issue here: lot 22 and lots 28 through 45 of the Silver Creek Phase III plat in Puyallup. First-Citizens foreclosed and purchased the Silver Creek lots at a trustee's sale on September 18, 2009.

On February 24, 2011, Oakridge, through a real estate agent, transmitted a purchase offer in the form of a document titled "Vacant Land Purchase and Sale Agreement," consisting of several preprinted Northwest Multiple Listings Service forms with attachments. Oakridge's transmission included a page with the full legal description of the Silver Creek lots at issue here. Oakridge's president, Scott Serven, had signed the forms and attachments.

On March 2, 2011, First-Citizens sent Oakridge a counteroffer. The counteroffer consisted of the same preprinted forms signed by Serven, a cover page titled "Counteroffer Addendum to Real Estate Purchase and Sale Agreement," and a page labeled "Exhibit C" containing a list of the Silver Creek lots with various data, including street addresses and tax parcel numbers. Clerk's Papers (CP) at 223-55.

First-Citizens' March 2 transmission did not include the page with the legal description of the Silver Creek lots. The counteroffer addendum stated, however, that First-Citizens accepted all the terms of Oakridge's February 24 purchase and sale agreement except for 10 specified changes. Handwritten modifications corresponding to these changes appear in the preprinted forms—the same forms Serven had signed on February 24. None of the changes relates to the legal description of the Silver Creek lots.

2

Serven signed and returned the counteroffer addendum and the transaction proceeded to escrow. The escrow agent found that the Silver Creek lots were subject to school district impact mitigation fees of $3,005 per lot. At closing on the first 10 Silver Creek lots, the escrow agent credited the amount of the impact fees to Oakridge, deducting it from the money due to First-Citizens.

On April 14, 2011, First-Citizens' Vice President Dawn Gadwa signed the closing documents, including a bargain and sale deed that included the full legal description of the Silver Creek lots. She made handwritten changes to the settlement statement, however, subtracting the mitigation fees from the amount credited to Oakridge. Gadwa also added an addendum to the agreement, purporting to modify one of the terms so as to assign to Oakridge rather than First-Citizens responsibility for charges and assessments due after closing. Oakridge rejected Gadwa's attempt at modification and the deal failed to close.

Oakridge sued First-Citizens on May 12, 2011, requesting specific performance or damages, plus costs and attorney fees under the agreement. First-Citizens answered on June 15, raising various defenses including failure to state a claim, contractual waiver, and noncompliance with the statute of frauds. On June 24, Oakridge filed a declaration by Serven, dated June 15, 2011, that purported to include as an attachment a copy of "the original purchase and sale agreement together with the counter-offer from" First-Citizens. CP at 5. However, the attachment consisted only of the March 2 transmission from First-Citizens to Oakridge, which did not include the legal description of the Silver Creek lots.

Oakridge moved for partial summary judgment, requesting a determination that First-Citizens was responsible for the school impact fees. In response, First-Citizens argued, among

3

other things, that the agreement did not include a full legal description of the parcels and was therefore void under the statute of frauds. First-Citizens then filed a cross motion for summary judgment based on the defenses it had asserted. In support of its argument that the agreement was void under the statute of frauds, First-Citizens pointed out that the copy of the agreement provided with Serven's own declaration did not include the legal description.

The court denied Oakridge's motion and granted First-Citizens' motion on the grounds that the agreement lacked an adequate legal description, making it void under the statute of frauds. The court then denied Oakridge's motion for reconsideration and granted First-Citizens' request for attorney fees. Oakridge timely appeals.

## ANALYSIS

Oakridge contends that the trial court erred by granting summary judgment to First-Citizens based on the agreement's noncompliance with the statute of frauds. We agree, and therefore reverse the grant of summary judgment to First-Citizens and remand to the trial court for further proceedings consistent with this opinion. We decline to reach, on the record before us, the other claims raised by the parties, leaving it to the trial court to resolve those issues in the first instance.

## I. STANDARD OF REVIEW

We review a grant or denial of summary judgment de novo and perform the same inquiry as the trial court. *Macias v. Saberhagen Holdings, Inc.*, 175 Wn.2d 402, 407-08, 282 P.3d 1069 (2012); *Torgerson v. One Lincoln Tower, LLC*, 166 Wn.2d 510, 517, 210 P.3d 318 (2009). A party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact remains. *Atherton Condo. Apartment Owners Ass'n Bd. of Dir. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990). If the moving party satisfies its burden, the nonmoving party must present evidence that demonstrates that a material fact is in dispute. *Atherton*, 115 Wn.2d at 516.

Court rules provide for summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). "A material fact is one on which the outcome of the litigation depends in whole or in part." *Atherton*, 115 Wn.2d at 516 (citing *Morris v. McNicol*, 82 Wn.2d 491, 494, 519 P.2d 7 (1974)). A court should grant summary judgment only if reasonable persons could reach but one conclusion from all the evidence. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005). In reviewing a summary judgment, we consider all facts, and the reasonable inferences from the facts in the light most favorable to the nonmoving party. *Vallandigham*, 154 Wn.2d at 26; *Atherton*, 115 Wn.2d at 516.

Because the court below decided this case on cross motions for summary judgment, we review the entire matter de novo. In reviewing the trial court's judgment in favor of First-Citizens, we view the evidence in the light most favorable to Oakridge.

## II. STATUTE OF FRAUDS

Oakridge assigns error to the trial court's ruling that the lack of a full legal description rendered the agreement void under the statute of frauds. Oakridge argues that the agreement satisfied the requirements of the statute on three independent grounds: (1) the agreement incorporated the full legal description by reference; (2) the information contained in First-Citizens' counteroffer alone identified the exact location and extent of the Silver Creek lots without recourse to parol testimony; and (3) the subsequent signing of a deed by First-Citizens, containing the full legal description, removed any potential uncertainty as to the identity of the Silver Creek lots.[1] Because we hold the requirements of the statute of frauds satisfied both by incorporation of the legal description and by the identifying information appearing in First-Citizens' counteroffer, we do not address the parties' other arguments concerning the statute of frauds.

Washington's statute of frauds mandates that "[e]very conveyance of real estate, or any interest therein, and every contract creating or evidencing any encumbrance upon real estate, shall be by deed." RCW 64.04.010. Our courts have long held that this requires "a description of the land sufficiently definite to locate it without recourse to oral testimony" or "a reference to another instrument which does contain a sufficient description." *Bigelow v. Mood*, 56 Wn.2d 340, 341, 353 P.2d 429 (1960) (citing *Bingham v. Sherfey*, 38 Wn.2d 886, 234 P.2d 489 (1951)). Washington adheres to this rule more strictly than perhaps any other state. 18 WILLIAM B.

---

[1] Oakridge also argues that we should not invalidate the agreement under the statute of frauds because doing so would enable the perpetration of a fraud, citing *Miller v. McCamish*, 78 Wn.2d 821, 479 P.2d 919 (1971). That case, however, involved part performance of an oral contract. Oakridge does not discuss the elements of fraud or explain how First-Citizens' conduct amounts to fraud.

No. 43030-4-II

STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS § 16.3, at 225 (2d ed. 2004). Our Supreme Court upheld the rule against a direct challenge 14 years ago in *Key Design Inc. v. Moser*, 138 Wn.2d 875, 881, 884, 983 P.2d 653 (1999).

1.      Incorporation of the Legal Description by Reference

Oakridge first argues that the agreement satisfied the statute of frauds because it incorporated the full legal description by reference. Because the parties here clearly and unequivocally expressed their intent to incorporate the page containing the full legal description into the agreement, we hold that the agreement met the requirements of the statute.

It is settled law in Washington that "'[i]f the parties to a contract clearly and unequivocally incorporate by reference into their contract some other document, that document becomes part of their contract.'" *Wash. State Major League Baseball Stadium Pub. Facilities Dist. v. Huber, Hunt & Nichols-Kiewit Constr. Co.*, 176 Wn.2d 502, 517, 296 P.3d 821 (2013) (quoting *Satomi Owners Ass'n v. Satomi, LLC*, 167 Wn.2d 781, 801, 225 P.3d 213 (2009)). The statute of frauds does not require that a single document contain all the required terms, provided that some collection of writings contains the necessary information and "'the writings are so connected by internal reference . . . that they may be said to constitute one paper relating to the contract.'" *Knight v. Am. Nat'l Bank*, 52 Wn. App. 1, 5, 756 P.2d 757 (1988) (quoting *Grant v. Auvil*, 39 Wn.2d 722, 724-25, 238 P.2d 393 (1951)). The parties need not physically attach a document to the contract to incorporate it by reference. *W. Wash. Corp. of Seventh-Day Adventists v. Ferrellgas, Inc.*, 102 Wn. App. 488, 498-99, 7 P.3d 861 (2000).

Here, the preprinted forms which were part of Oakridge's February 24 purchase offer contained a space for the legal description in which the preparer wrote "Attached as Exhibit A."

7

CP at 224. No attachment to the forms in the record is marked "Exhibit A," and no Exhibit A appears in the list of addenda. However, the full legal description of the Silver Creek lots appeared as the first attachment following the preprinted forms, immediately preceding the attachment labeled "Exhibit B," and bore the signatures of both Serven and Gadwa. CP at 232-35. Thus, the February 24 agreement contained the full legal description of the properties at issue.[2]

The Counteroffer Addendum by First-Citizens directly refers to the February 24 purchase and sale agreement, explicitly incorporating all of its terms and conditions except those inconsistent with the 10 items set forth in the addendum.[3] The subject matter of the transaction plainly qualifies as a "term" of the agreement. *Knight*, 52 Wn. App. at 4. None of the 10 items in the counteroffer addendum relate to the legal description of the properties.

First-Citizens does not actually dispute that Oakridge's agent supplied this legal description with the initial offer. Instead, First-Citizens contends there is no dispute that the legal description was not part of the agreement because Serven's declaration of June 15, 2011 purported to describe the agreement yet only contained First-Citizens' March 2 counteroffer, which did not include the legal description. This contention begs the question, however,

---

[2] The references in these documents distinguish this case from *Home Realty Lynnwood, Inc. v. Walsh*, 146 Wn. App. 231, 189 P.3d 253 (2008), in which Division One of this court held an earnest money agreement void for lack of a legal description despite testimony that the real estate agent's file contained an adequate description. In that case, the parties did not present the file to the trial court and the agreement did not explicitly refer to the description, so the only evidence properly before the trial court connecting the agreement with the legal description consisted of parol testimony. *Walsh*, 146 Wn. App. at 238-39.

[3] Although a counteroffer "ordinarily rejects and terminates the original offer," *Black's Law Dictionary* 403 (9th ed. 2009), such is not the case here because First-Citizens' March 2 response explicitly accepts the terms of Oakridge's February 24 offer.

because, as just shown, First-Citizens' counteroffer plainly incorporated the terms of Oakridge's February 24 offer, including the legal description. The absence of the page with the legal description in First-Citizens' counteroffer, therefore, was of no moment. Further, Oakridge provided the trial court with copies of both its initial offer and First-Citizens' counteroffer, along with a declaration from the agent that explained why Serven's declaration had described the attachment as it did. Thus Serven's declaration is not an admission that the contract did not include a legal description.

The March 2 counteroffer clearly incorporated the terms of the February 24 purchase and sale agreement, which in turn incorporated the full legal description. The fact that the page containing the description was not labeled "Exhibit A" is irrelevant. The agreement referred to an attachment containing the legal description, and the description is found between the last page of the preprinted forms and the attachment labeled "Exhibit B," exactly where one would expect. Courts do not permit "creative lawyers" to use typographical errors in a contract "to obscure the clear intentions of the parties." *Sackman Orchards v. Mountain View Orchards*, 56 Wn. App. 705, 706-07, 784 P.2d 1308 (1990) (citing *Schauerman v. Haag*, 68 Wn.2d 868, 873, 416 P.2d 88 (1966)).

The language used by the parties here clearly and unequivocally expressed their intent to incorporate the page containing the full legal description into the agreement. We therefore hold that the trial court erred in granting summary judgment to First-Citizens based on lack of a legal description.

2.     <u>Sufficiency of Other Information Contained in the Agreement</u>

Oakridge further argues that, even if the agreement did not incorporate by reference the legal description of the Silver Creek lots, other information included in First-Citizens' March 2 counteroffer, such as the tax parcel numbers, lot numbers, plat name, and county, state and zip code, satisfy the requirements of the statute of frauds. Because a person of average intelligence could identify the exact location and extent of the Silver Creek lots at issue from judicially cognizable public records, without recourse to oral testimony, based only on the information in First-Citizens' counteroffer, we hold as an alternative ground for reversal that this information also satisfies the requirements of the statute of frauds.

First-Citizens directs our attention to *Martin v. Seigel*, 35 Wn.2d 223, 229, 212 P.2d 107 (1949), where our Supreme Court specified that a "conveyance of platted real property must contain . . . the correct lot number(s), block number, addition, city, county, and state." Although our Supreme Court continues to cite *Martin* for that proposition, the Court long ago recognized that it had relaxed this position somewhat. *Compare Tenco, Inc. v. Manning*, 59 Wn.2d 479, 484-85, 368 P.2d 372 (1962) (noting that "*Martin v. Seigel* has since been qualified to a certain extent" and citing cases) *with Pardee v. Jolly*, 163 Wn.2d 558, 567, 182 P.3d 967 (2008) (citing *Martin* for the proposition that "a contract for the sale or conveyance of platted real property must include a description of the property with the correct lot number, block number, addition, city, county, and state.").

Notably, just two years after it decided *Martin*, our Supreme Court held that a county assessor's tax parcel number, when combined with the otherwise insufficient information in a defective legal description, satisfied the statute of frauds because it would lead an interested party to the full legal description in the county records. *Bingham*, 38 Wn.2d at 889 (noting that

10

"[t]hat is certain which can be made certain."). The *Bingham* Court went even further, supplying the omitted directional reference for a meridian, based on the fact that it could only be east or west, and west would place the property in the Pacific Ocean. *Bingham*, 38 Wn.2d at 887. In another case decided that year, *Lofberg v. Viles*, 39 Wn.2d 493, 496-97, 236 P.2d 768 (1951), our Supreme Court upheld the trial court's decision to reform a defective description of platted property by taking judicial notice of the fact that "Chehalis is in Lewis county, [state of] Washington." Similarly, 10 years later, our Supreme Court held that an instrument conveying an easement satisfied the statute because the precise location could "be located by reference to the government monuments" identified on an attached blueprint. *City of Seattle v. Nazarenus*, 60 Wn.2d 657, 661, 374 P.2d 1014 (1962). Considering that some of the details mentioned in *Martin*, notably block numbers, do not appear in many plats, including the one at issue here, we cannot take literally the language cited from *Martin*.

The *Martin* Court described the purpose of the strict rule it announced as "to require people dealing with real estate to properly and adequately describe it, so that courts may not be compelled to resort to extrinsic evidence in order to find out what was in [their] minds." *Martin*, 35 Wn.2d at 228. In reaffirming the rule, the *Key Design* Court pointed out that the "requirements of the statute for land contracts helps [sic] to create a climate in which parties often regard their agreements as tentative until there is a signed writing," noting that the party against whom enforcement was sought in that case claimed exactly that, that the negotiations were still ongoing. *Key Design*, 138 Wn.2d at 887. Such is not the case here. The transaction proceeded to escrow, and First-Citizens' representative signed both a copy of the legal

description and a deed containing the legal description, demonstrating that the parties intended to enter into a binding agreement concerning property readily identifiable by a court.

"[I]f requested by a party and supplied with the necessary information," a court must take judicial notice of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." ER 201. Judicially noticeable facts include matters of public record, such as the system of land surveying and recording used in the United States. *Bingham*, 38 Wn.2d at 887. Oakridge correctly states that a person of average intelligence could obtain all the information required by *Martin* from judicially cognizable public records, without recourse to oral testimony, just from the information in First-Citizens' March 2 counteroffer.

First-Citizens correctly states that no Washington case has held that the tax parcel number alone satisfies the statute of frauds. Here, however, the plat name, lot numbers, county, state, zip code, and street addresses also appear in the counteroffer.[4] We conclude that this information suffices under the rule expressed in *Bigelow*, 56 Wn.2d at 341, and hold, also on this alternative ground, that the trial court erred in granting summary judgment to First-Citizens based on lack of a legal description.

---

[4] In a case decided the year before *Martin*, our Supreme Court held tax lot numbers, together with descriptions of the "general locality" of the properties, sufficient for purposes of a tax foreclosure sale. *City of Centralia v. Miller*, 31 Wn.2d 417, 427-29, 197 P.2d 244 (1948).

12

### III. COSTS AND ATTORNEY FEES

The terms of the purchase and sale agreement entitle the prevailing party in a dispute concerning the agreement to reasonable attorney fees and expenses. The trial court awarded $23,369.70 in costs and fees to First-Citizens after it granted First-Citizens' summary judgment motion. As the result of our holdings here, it cannot be said at this point that First-Citizens prevailed at trial. Therefore, we vacate the trial court's award of costs and fees to First-Citizens. In determining the prevailing party on remand for purposes of attorney fees, the trial court shall take Oakridge's prevailing in this appeal into consideration. Once the prevailing party is determined on remand, it may request the trial court to award attorney fees on any appropriate basis.

Both Oakridge and First-Citizens request costs and attorney fees on appeal. "A contractual provision for an award of attorney fees at trial supports an award of attorney fees on appeal." *Reeves v. McClain*, 56 Wn. App. 301, 311, 783 P.2d 606 (1989). However, because we remand for further proceedings, the prevailing party remains to be decided, and neither party is yet entitled to costs or fees. If Oakridge prevails on remand, it will be entitled to the reasonable costs and fees it incurred in this appeal. *See Stieneke v. Russi*, 145 Wn. App. 544, 572, 190 P.3d 60 (2008).

### IV. CONCLUSION

Because we hold that the purchase and sale agreement incorporated the legal description by reference and that other information in the agreement also satisfied the requirements of the statute of frauds, we vacate the trial court's summary judgment and attorney fee award in favor

of First-Citizens.  We decline to reach the other issues raised in this appeal, however, and remand for further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJÖRGEN, J.

We concur:

HUNT, P.J.

QUINN-BRINTNALL, J.