191 P.3d 76 (2008)
GEONERCO, INC. and/or assigns, n/k/a Riverside Homes, Inc., an Oregon Corporation d/b/a Riverside Homes Vancouver, Respondent,
v.
GRAND RIDGE PROPERTIES IV LLC, an Oregon limited liability company, Appellant.
No. 36609-6-II.
Court of Appeals of Washington, Division 2.
August 26, 2008.
*78 Bradley Alan Maxa, Gordon Thomas Honeywell, Tacoma, WA, for Respondent.
Bradley W. Andersen, Attorney at Law, Phillip Justin Haberthur, Schwabe Williamson & Wyatt, Vancouver, WA, for Appellant.
HUNT, J.
¶ 1 Grand Ridge Properties, Inc. appeals the trial court's grant of Geonerco Inc.'s (dba Riverside Homes) motion for summary judgment to compel specific performance of the parties' Real Estate Purchase and Sales Agreement (REPSA). Grand Ridge argues that the trial court erred in ruling the REPSA enforceable because the REPSA (1) does not reflect a meeting of the minds between the parties, and (2) fails to satisfy the statute of frauds. We affirm.

FACTS

I. BACKGROUND
¶ 2 Grand Ridge Properties acquires large undivided tracts of land to subdivide and to develop into individual "finished" residential lots. "Finishing" the lots includes (1) making necessary improvements to the tract, such as building roads; (2) ensuring compliance with local ordinances; and (3) and obtaining county plat approval. Riverside Homes purchases "finished" residential lots, builds homes on the lots, and sells them to consumers.

A. Preliminary Plat Application
¶ 3 In 2000, Grand Ridge agreed to finish 22 lots on a large tract of land in Clark County and to sell the finished lots to Riverside. On April 28, 2003, the County approved Grand Ridge's preliminary plat application, conditioned on additional road grading, reduction from 22 to 20 lots, adding a storm drain facility, and paved surface improvements, including sidewalks.

B. Purchase and Sale Agreement
¶ 4 Meanwhile, in May 2002, Grand Ridge and Riverside had negotiated and signed a REPSA.[1] The REPSA required Grand Ridge to provide Riverside with "a complete legal description" of the property and to obtain title insurance.
¶ 5 Because the plat had not yet been finally approved and recorded, the REPSA's legal description comprised a metes and bounds description of the entire tract. In apparent anticipation of eventual final plat approval, the REPSA also contained the following clause: "Seller and Buyer . . . authorize Escrow to insert over their signatures the correct legal description of the real Property." Clerk's Papers. (CP) at 142.

C. REPSA Addendum 1
¶ 6 The County's required improvements and other alterations to the project caused the parties to renegotiate the REPSA eight times and to sign a series of addenda. Addendum 1 to the REPSA provided that there were:
[t]wenty-One (21) finished lots in the proposed Plat . . . [and] Seller warrants that the Property to be conveyed is contained with the boundaries of the property described in schedule A of the commitment for title insurance by Chicago Title Insurance Company Order . . . attached hereto as Exhibit C.
CP at 158. Attached Exhibit C, however, was a plat map, not a legal description. Addendum 1 also provided that if the County *79 approved fewer than the agreed-upon 21 lots, then Riverside would pay a reduced price per lot.

D. Final Approval and Recording of Plat
¶ 7 On March 30, 2006, the County approved and recorded a 20-lot plat for the tract. As set out in REPSA Addendum 1, the title insurance documents incorporated the legal description of the subdivision by referring to county records: The "Commitment for Title Insurance" refers to the tract as "Lot 1 through 20, GRAND RIDGE PHASE IV, according to the plat thereof, recorded in Volume 311 of Plats, Page 367, records of Clark County, Washington." CP at 386.
¶ 8 According to Grand Ridge, the parties then negotiated a final addendum, which would have required Riverside to increase each lot's purchase price to reflect unforeseen project costs. But Riverside did not prepare such a final addendum.
¶ 9 Instead, on May 11, 2006, Riverside told Grand Ridge that it was willing and able to close on the existing REPSA. Riverside tendered performance of its obligation to close by directing its escrow agent to prepare the closing documents, including a legal description of the lots recorded with the County, in accordance with Addendum 1 of the REPSA. Grand Ridge, however, refused to convey the subdivision lots to Riverside without a final addendum reflecting the increased purchase price of each lot.

II. PROCEDURE
¶ 10 Riverside sued Grand Ridge for specific performance of the REPSA and moved for summary judgment.
¶ 11 Grand Ridge moved for summary judgment dismissal of Riverside's action. Grand Ridge asserted that the REPSA was unenforceable because (1) in failing to include a legal description of the property, it violated the statute of frauds; (2) it failed to reflect Riverside's verbal promise to increase the purchase price per lot to compensate Grand Ridge for cost overruns; and (3) there was no meeting of the minds between the parties. Grand Ridge also counterclaimed against Riverside for rescission and promissory estoppel.
¶ 12 Riverside moved for partial summary judgment to strike Grand Ridge's affirmative defenses.
¶ 13 The trial court rejected Grand Ridge's arguments and granted Riverside's motion for summary judgment. With respect to the tract's legal description, the court relied on Nishikawa v. United States Eagle High, L.L.C, 138 Wash.App. 841, 158 P.3d 1265 (2007), review denied, 163 Wash.2d 1020, 180 P.3d 1292 (2008) and ruled:
[S]eller and buyer specifically authorized escrow to insert over their signatures the correct legal description of the property. . . . [Because Washington case law allows] the parties to the agreement [to] authorize an independent third party to insert an appropriate legal description, it is a valid delegation of that authority.
CP at 942-43.
¶ 14 The trial court also emphasized that, despite Grand Ridge's claim of oral agreements after signing the REPSA, "the testimony from the depositions does not give rise to an agreement to modify on the face of the integrated contract of the parties." CP at 944. The trial court concluded that: (1) the REPSA contained an adequate legal description, (2) "nowhere in the testimony asserted was there any agreement by [Riverside] that they would modify the payment conditions," and (3) the REPSA was enforceable against Grand Ridge. The trial court ordered specific performance under the REPSA.
¶ 15 Grand Ridge appeals.

ANALYSIS
¶ 16 Grand Ridge argues that the parties did not have a meeting of minds, thus voiding the REPSA, which does not accurately describe the property Riverside promised to purchase from Grand Ridge. Riverside counters that the REPSA shows the parties intended to convey the entire tract, not merely individual platted lots within the tract. We agree with Riverside: The record supports the trial court's ruling that the REPSA was enforceable to convey the entire tract.

*80 I. STANDARD OF REVIEW
¶ 17 When reviewing an order for summary judgment, we perform the same inquiry as the trial court. Hisle v. Todd Pac. Shipyards Corp., 151 Wash.2d 853, 860, 93 P.3d 108 (2004) (citing Kruse v. Hemp, 121 Wash.2d 715, 722, 853 P.2d 1373 (1993)). The standard of review is de novo. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).
¶ 18 Where a party seeks specific performance under a contract, that party must prove the terms, character, and existence of the contract by "clear and unequivocal" evidence. Kruse, 121 Wash.2d at 722, 853 P.2d 1373 (quoting Powers v. Hastings, 93 Wash.2d 709, 717, 713, 612 P.2d 371 (1980)). Such is the case here.

II. "MEETING OF THE MINDS"
¶ 19 An enforceable contract requires a "meeting of the minds" on the essential terms of the parties' agreement. McEachern v. Sherwood & Roberts, Inc., 36 Wash.App. 576, 579, 675 P.2d 1266 (citing Peoples Mortgage Co. v. Vista View Builders, 6 Wash.App. 744, 496 P.2d 354 (1972)), review denied, 101 Wash.2d 1010, 1984 WL 287410 (1984). The court may consider trade usage and course of dealing between parties to interpret a contract's terms, even absent any ambiguity in its terms. Puget Sound Financial, LLC v. Unisearch, Inc., 146 Wash.2d 428, 434, 47 P.3d 940 (2002) (citing RESTATEMENT (SECOND) OF CONTRACTS § 222 (1981)).
¶ 20 Purchase and sale agreements, also called "earnest money agreements," are contracts "whereby essentially an owner promises to convey, and the purchaser to pay. . . for real estate." 18 WILLIAM B. STOEBUCK AND JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS § 16.1, at 215 (2004) (WPI). These agreements do not themselves convey title; instead, purchase and sale agreements are promises to convey title in the future. 18 WPI § 16.1, at 216.
¶ 21 The statute of frauds requires all real estate conveyances, including a purchase and sales agreement's conveyance of a future interest, to contain "a description of the land sufficiently definite to locate it without recourse to oral testimony." Key Design, Inc. v. Moser, 138 Wash.2d 875, 881, 983 P.2d 653 (1999) (quoting Martinson v. Cruikshank, 3 Wash.2d 565, 567, 101 P.2d 604 (1940)). In Washington, a purchase and sale agreement "containing an inadequate legal description of the property to be conveyed is void as being in violation of the statute of frauds." Schweiter v. Halsey, 57 Wash.2d 707, 710, 359 P.2d 821 (1961) (citing Martin v. Seigel, 35 Wash.2d 223, 212 P.2d 107 (1949)). Here, we agree with the trial court that the REPSA's legal description, coupled with its provision for future insertion of a more specific description, was not inadequate and, therefore, did not violate the statute of frauds.

A. Intent to Convey the Entire Parcel

1. REPSA terms
¶ 22 The record supports the trial court's conclusion that the REPSA's text reveals a meeting of the parties' minds on its essential terms. Riverside gave notice that it was ready and willing to close on the entire tract of land, including all lots. The closing documents that Riverside submitted for Grand Ridge to sign contained a promise to purchase the entire tract, not separate portions or lots, as Grand Ridge asserts. The parties reflected this intent to convey the entire tract, for example, by negotiating a reduced purchase price per lot if the County approved fewer than the originally proposed 21 lots for the tract. Such reduced price per lot, however, did not affect the parties' intent that REPSA encompassed eventual conveyance of the entire tract, regardless of the number of individual lots into which it was subdivided.
¶ 23 The County required the development to dedicate roads, sidewalks, and a storm drainage pond. And the REPSA anticipated such improvements by originally requiring that all lots contain paved streets and sidewalks. Thus, the REPSA evinced Riverside's intent to purchase finished, legal lots that complied with County requirements, including *81 proper road grading, utilities, and a storm drain facility. Eventual dedication of the subdivision's internal infrastructure did not affect the parties' intent to convey the tract as a whole.

2. Course of dealing
¶ 24 The record of the parties' course of dealing similarly evinces the parties' meeting of the minds on the essential terms of the REPSA; such a finding was implicit in the trial court's ruling that the REPSA was enforceable. Throughout the parties' communications with one another, neither showed any intention to convey anything other than the entire tract. On the contrary, they consistently referred to the entire development as "the project,"[2] even when negotiating specific features such as road grading, building retention walls, and the number of lots within the tract.
¶ 25 We hold that the record supports the trial court's ruling that the REPSA was enforceable as the embodiment of the parties' agreement to convey the subdividable tract described.

III. STATUTE OF FRAUDS
¶ 26 Grand Ridge next argues that the trial court erred by enforcing the REPSA because it failed to satisfy the statute of frauds. Riverside counters that the REPSA complied with the statute of frauds because it contained in writing all essential elements of the parties' agreement. Riverside prevails. We affirm the trial court's summary judgment order of specific performance of the REPSA.

A. Legal Description Requirement
¶ 27 Grand Ridge first argues that the REPSA violated the statute of frauds because it did not include an adequate legal description of the property. We disagree.
¶ 28 To comply with the statute of frauds, Washington strictly requires a legal description of the property that an agreement purports to convey. See Martin, 35 Wash.2d at 228, 212 P.2d 107. But there is an exception to this rule where, although a purchase and sale agreement itself includes no legal description, the agreement authorizes an agent to "insert the legal description of the properties over their signatures" at a later time. Noah v. Montford, 77 Wash.2d 459, 463, 463 P.2d 129 (1969) (citing Edwards v. Meader, 34 Wash.2d 921, 210 P.2d 1019 (1949)).
¶ 29 We recently reaffirmed this principle in Nishikawa, 138 Wash.App. 841, 158 P.3d 1265. Two parties authorized an agent to insert a legal description in a purchase and sale agreement over their signatures at a later time. 138 Wash.App. at 845-46, 158 P.3d 1265.[3] Because the parties authorized the agent to insert the legal description and the agent did so, we held that the agreement satisfied the statute of frauds' requirement of a legal description.[4]Nishikawa, 138 Wash. App. at 849-50, 158 P.3d 1265.
*82 ¶ 30 Similarly here, the REPSA satisfied the statute of frauds under this exception: The REPSA authorized the parties' escrow agent, the title company, to insert a legal description over their signatures at a later date, and the title company did so. Thus, under Washington law, the REPSA contained a valid legal description and satisfied the statute of frauds.[5]

B. Conveying "Future" Parcels
¶ 31 Grand Ridge next argues that the REPSA "violate[d] the statute of frauds by attempting to convey future parcels." Br. of Appellant at 18. Riverside counters that Washington law allows purchase and sale agreements to convey property conditioned on preliminary plat approval. Again, we agree with Riverside.
¶ 32 Generally, Washington law disallows the sale or transfer of parcels "without having a final plat of such subdivision filed for record." RCW 58.17.200. But a specific exception to this statute exists in RCW 58.17.205, which provides:
If performance of an offer or agreement to sell ... or otherwise transfer a lot, tract, or parcel of land following preliminary plat approval is expressly conditioned on the recording of the final plat containing the lot, tract, or parcel under this chapter, the offer or agreement is not subject to RCW 58.17.200 ... and does not violate any provision of this chapter. All payments on account of an offer or agreement conditioned as provided in this section shall be deposited in an escrow ... account and no disbursement to sellers shall be permitted until the final plat is recorded.
Here, the REPSA conformed to this exception.
¶ 33 The record supports the trial court's implicit finding that the parties' stated intent was that the 2000 REPSA embody Grand Ridge's promise to convey and Riverside's promise to buy a future finished-lot subdivision, where the county had not yet given preliminary plat approval for the individual lots. Reflecting this intent, the REPSA expressly provided that Grand Ridge, as the seller, must "provide Buyer [Riverside] with copies of all documents pertaining to the Property which shall include ... the preliminary plat approval containing conditions required for final plat approval, [and] the recorded plat if recorded." CP at 146. Thus, the REPSA purported to provide for the transfer of future lots "expressly conditioned on the recording of the final plat," under RCW 58.17.205.
¶ 34 We hold, therefore, that RCW 58.17.200's prohibition on transferring property not yet recorded does not apply, the RCW 58.17.205 exception does apply, and, as the trial court correctly ruled, the REPSA was enforceable against Grand Ridge.

IV. ATTORNEY FEES
¶ 35 Last, Grand Ridge argues that the trial court erred by awarding attorney fees to Riverside as the "prevailing party" at trial. Riverside responds that it was the prevailing party at trial and, thus, we should affirm the trial court's award of attorney fees. Each asserting status as the "prevailing party" on appeal, both parties request that we grant them appellate attorney fees under the terms of the REPSA. We turn to the REPSA to resolve these issues.
¶ 36 The REPSA provided:
In the event that either party hereto brings an action or proceeding for a declaration of the rights of the parties under this Agreement for injunctive relief, or for an alleged breach or default of this Agreement... the prevailing party in any such action shall be entitled to an award of reasonable attorney fees and court costs incurred ... regardless of whether such action proceeds to final judgment.
CP at 18. Riverside is the prevailing party both at trial and on appeal.
*83 ¶ 37 Accordingly, we affirm the trial court's award of reasonable trial attorney fees to Riverside, and we award additional attorney fees to Riverside on appeal. We also affirm the trial court's grant of summary judgment to Riverside on its claim for specific performance of the REPSA.
WE CONCUR: ARMSTRONG, J., and PENOYAR, A.C.J.
NOTES
[1] Riverside prepared the REPSA, but it used the wrong stock form. Consequently, the REPSA mistakenly referred to the purchase and sale of "Oregon Finished Lots" instead of Washington lots. Nonetheless, both parties concede that Washington law applies.
[2] For example, in 2001, Grand Ridge sent Riverside an estimate of the project's costs, referring to the entire tract as a unit. Similarly, in a 2005 communication, Grand Ridge referred to the project as "the plat and its 20 lots" when it informed Riverside that the entire property was "close to being complete." CP at 587.
[3] We decided Nishikawa on slightly different grounds than those at issue here. In Nishikawa, in an attempt to invalidate the purchase and sale agreement before closing, the seller orally directed the agent not to enter the legal description. 138 Wash.App. at 846, 158 P.3d 1265. But the agent disregarded these instructions and inserted the legal description into the purchase and sales agreement, over the buyer and seller's signatures, just as the written agreement provided. Nishikawa, 138 Wash.App. at 846, 158 P.3d 1265.

The seller alleged that it had revoked the agent's authority to insert the legal description and, thus, the purchase and sale agreement was void. Nishikawa, 138 Wash.App. at 848, 158 P.3d 1265. We disagreed, holding that because both parties had authorized the agent to insert the legal description, one party could not unilaterally revoke this authority, set forth in the purchase and sales agreement. Nishikawa, 138 Wash.App. at 849, 158 P.3d 1265.
[4] See also 18 WPI § 16.3, at 225-26 (2004):

The most important exception is that, even though an earnest money agreement contains no legal description, it is valid if it authorizes an agent for the vendor later to fill in the legal description and the agent does so. For that reason, standard printed forms of earnest money agreement always do, or should, contain a boilerplate clause allowing the agent to fill in the legal description.
[5] We also note that the REPSA delegated to Grand Ridge responsibility for inserting the tract's legal description: The REPSA provided that Grand Ridge, as the seller, "warrants that this is the correct legal description ... [and][i]f the above legal description is not a complete legal description of the Property to be conveyed, Seller shall provide Buyer with a complete legal description." CP at 142.