FILED
COURT OF APPEALS
DIVISION II

2013 AUG -6 AM 9: 14

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| TICOR TITLE CO., a Washington corporation, | No. 42394-4-II |
| Plaintiff Interpleader, | UNPUBLISHED OPINION |
| v. | |
| SUMMIT UNISERV COUNCIL, a Washington non-profit organization, | |
| Respondent/Cross Appellant, | |
| v. | |
| WILLIAM B. MOORE, | |
| Appellant/Cross Respondent. | |

BJORGEN, J. — William B. Moore appeals the trial court's judgment in favor of Summit Uniserv Council (Summit) in this dispute over the attempted purchase of real property. Moore argues that the trial court erred by: (1) concluding that the parties failed to form a contract because they lacked a meeting of the minds, (2) alternatively concluding that Summit exercised the financing contingency, (3) allowing Summit to amend its answer to include a cross-claim, and (4) disbursing the earnest money to Summit.

Summit cross appeals, asking us to reverse the trial court's decisions: (1) obligating Summit to pay a portion of the phase II environmental assessment fee, (2) awarding no prejudgment interest on the earnest money, and (3) awarding less than Summit's full attorney fees and costs.

No. 42394-4-II

We hold that there was no "meeting of the minds" on all essential terms of the proposed purchase and sale agreement and that the agreement never became effective. We hold further that the trial court properly allowed Summit to amend its answer, that Moore is solely responsible for the cost of the phase II assessment, that the trial court properly disbursed the earnest money to Summit in July 2011, and that Summit is entitled to prejudgment interest on that earnest money at the statutory judgment interest rate for the period of October 4, 2007 to July 22, 2011. We reverse the partial award of attorney fees at trial, hold that Summit is entitled to its full fees and costs on equitable grounds, and remand for determination of the amount. We also grant Summit's request for attorney fees on appeal.

FACTS

I. COMMERCIAL CONDOMINIUM NEGOTIATIONS

In 2007 Summit and Moore attempted to negotiate the purchase by Summit of a commercial condominium unit in a building that Moore was developing. The proposed purchase and sale agreement prepared by Moore's attorney contained several buyer's contingencies, including a general feasibility contingency and a financing contingency.[1] Additionally, the proposed agreement contained three provisions that separately required the buyer's and seller's initials.[2] These three provisions stated that: (1) Moore was not obligated to provide a public

---

[1] Purchase and sale agreements, also called "earnest money agreements," are contracts "'whereby essentially an owner promises to convey, and the purchaser to pay . . . for real estate.'" Geonerco, Inc. v. Grand Ridge Props. IV LLC, 146 Wn. App. 459, 465, 191 P.3d 76 (2008) (quoting 18 WILLIAM B. STOEBUCK AND JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS § 16.1, at 215 (2004)).

[2] Moore assigns error to a portion of this finding of fact. He asserts, "Finding of Fact No. 4 errs by stating that the three optional paragraphs of the Agreement 'would only become part of the PSA if the parties initialed those paragraphs.'" Br. of Appellant at 3.

2

offering statement to Summit, as otherwise required by the Washington Condominium Act, chapter 34.64 RCW; (2) if Summit breached the agreement without legal excuse, Moore's damages were liquidated and limited to the earnest money; and (3) the parties would arbitrate any disputes related to the agreement.

Summit was determined not to enter into any agreement subjecting its members to damages beyond the deposit; thus, it would not have signed the agreement without the provision limiting damages. Summit agreed to waive Moore's obligation to provide the public offering statement only if Moore agreed to limit his damages to the earnest money. Summit initialed all three provisions, signed the agreement, and delivered it to their mutual agent on June 8, 2007.

Moore countered with a revised proposed agreement, raising both the condominium unit's price and the amount of earnest money. Summit again initialed the three provisions, signed the agreement, and delivered it to their mutual agent. Moore signed a different copy of the same agreement, which copy did not include Summit's signature; Moore did not initial any of the three provisions.

The mutual agent faxed the signature page of the agreement, which Moore had signed, to Summit. The mutual agent asked Summit to re-sign so that both signatures would be on the same page. The mutual agent assured Summit that Moore had agreed to all the agreement's provisions. For this reason, Summit believed that Moore agreed to the provisions requiring both parties' initials. Summit signed and returned the signature page on June 20, 2007 and deposited $61,522 earnest money into escrow.

Moore neither advised Summit that he agreed to the optional provisions despite his missing initials nor that his missing initials signified his lack of agreement. Despite requesting a

final copy of the agreement showing both parties' signatures, Summit did not receive such a copy until litigation commenced in 2008. Summit only then learned that Moore had failed to initial the provisions.

In July 2007, Summit's lender bank received a copy of the phase I environmental site assessment for the property.[3] The assessment identified "moderate to high" contamination risk on virtually all of the properties that surrounded the site. Clerk's Papers (CP) at 171 (FF 15). Summit's lender bank advised Summit that it would not loan funds without a phase II environmental assessment to prove that the property was uncontaminated.[4]

Consequently, Summit e-mailed Moore on July 23, requesting an extension of the financing contingency period, and advising, "Alternatively, if that is not acceptable to Mr. Moore, Summit must exercise its financing contingency and terminate the agreement." CP at 164-65. Summit concluded the e-mail by assuring Moore that its preference was to obtain the extension and complete the transaction. Before receiving Moore's response, Summit sent a second e-mail on the same date stating that until the parties reached a mutually acceptable extension agreement, "please consider this Email as notice of [Summit's] intent to exercise the right to terminate the agreement pursuant to the financing contingency."[5] CP at 164, 172-73 (FF 17). Moore received these e-mail notices when Summit sent them.

---

[3] The phase I environmental site assessment cost $1,600; Summit contributed $835 to its cost.

[4] A phase II environmental site assessment typically includes soil and groundwater sampling and testing, collected from several locations around the property's perimeter.

[5] Moore assigns error to a portion of this finding of fact. He asserts, "Finding of Fact No. 17 errs by stating that Summit issued a notice on 7/23/07 'expressly terminating the PSA.'" Br. of Appellant at 3.

Summit remained interested in purchasing[6] the property if the environmental issues could be satisfactorily resolved and continued to negotiate with Moore.[7] Between July 23 and October 4, Moore proposed a number of amendments that would have extended the financing contingency deadline and established a closing date, provided that Summit remove the feasibility contingency. The parties, however, never finalized nor signed any of the amendments.

Moore commissioned a phase II environmental site assessment for a total cost of $10,783, which determined that the property was not contaminated, and on September 6, 2007 the bank advised Summit that it would provide financing, subject to a number of conditions precedent.

On September 11, Moore provided Summit a preliminary title insurance report, which disclosed for the first time that Moore had recorded an access, parking, and temporary construction easement over the property's parking lot to benefit Moore's adjoining property. Summit told Moore that the easement was a "significant issue" but it hoped to reach a compromise before September 20, which was the last day of the bank's loan commitment. Exh. 17. Without their attorneys present, Summit and Moore met on September 19 and discussed a compromise of the easement issue. The parties exchanged an electronic document entitled "Meeting Minutes," but never signed this document and never intended it to be an enforceable

---

[6] Moore assigns error to a portion of this finding of fact. He asserts, "Finding of Fact No. 18 errs by stating Summit remained interested in 'possibly' purchasing Unit A if the environmental issues could be satisfactorily resolved." Br. of Appellant at 3.

[7] Moore assigns error to a portion of this finding of fact. He asserts, "Finding of Fact No. 21 errs in stating that Summit and Moore continued to negotiate with each other regarding a 'possible' purchase and sale of Unit A." Br. of Appellant at 3.

agreement. Exh. 18. Instead, the parties intended that their attorneys should use the document to draft new, recordable documents that could become a new agreement.

On September 20, Summit accepted the bank's financing commitment by signing and returning the commitment letter along with its $5,000 check for the commitment fee. Moore drafted an agreement based on the minutes of the September 19 meeting on the easement, but the parties were unable to agree on a final recorded document. On October 4, Summit discontinued property negotiations with Moore and requested return of its earnest money. Summit notified Moore that it was exercising its general contingency, in addition to the financing contingency, taking the position that because Moore did not provide the preliminary title commitment until September 11, Summit's exercise of the general contingency was timely. Moore refused to authorize return of the earnest money.

II. PROCEDURE

Because the sale did not close, Ticor Title Company commenced an interpleader action to determine who was entitled to the earnest money. Summit cross-claimed against Moore, arguing that it properly exercised the financing contingency on July 23 and was entitled to the earnest money. Moore answered that Summit had waived the financing contingency by not exercising it within the required 45 business days. Moore also cross-claimed against Summit, seeking to compel Summit to purchase the property for $1,230,440, as well as to recover environmental assessment costs, the earnest money, and additional damages.

A month before the bench trial, Summit moved for summary judgment, arguing that it had learned through discovery that Moore had never initialed the three optional provisions. Moore responded that it was too late for Summit to argue that there never had been a contract

6

and that, procedurally, Summit must amend its answer before making this claim. The trial court denied Summit's summary judgment motion. However, it permitted Summit to amend its pleading and to argue that the parties never formed a contract.

At the end of the bench trial, the trial court concluded that the three optional provisions were material terms to the agreement and that Moore's failure to initial them meant he did not agree to them. The trial court further concluded that the parties never had a meeting of the minds on these points and never formed a contract.

Alternatively, the trial court concluded that even if the parties had formed a contract, Summit properly and timely terminated the agreement under the financing contingency. The court further concluded that the parties' conduct after Summit exercised its financing contingency showed that they believed Summit terminated the agreement. Additionally, the trial court concluded that the "Meeting Minutes" document did not reinstate the agreement.

The trial court determined that Summit was entitled to the earnest money less its 40.6 percent share of the cost for the phase II environmental assessment. The court, however, denied Summit's request for prejudgment interest on the earnest money. Summit requested $64,285.00 for attorney fees and $2,290.74 for costs. The trial court noted that Summit, as the prevailing party, was entitled to attorney fees under the agreement and awarded $50,000.00 for that purpose. Moore appeals, and Summit cross appeals.

ANALYSIS

Moore argues that the trial court erred by: (1) concluding that the three provisions requiring initials were essential to contract formation, (2) concluding that Summit properly exercised the financing contingency, and (3) allowing Summit to amend its answer to include the

7

No. 42394-4-II

argument that there was no contract. Summit responds that the trial court properly concluded that the parties never had a meeting of the minds and, alternatively, that Summit terminated the agreement under the financing contingency. Summit also argues that the court properly allowed it to amend its answer.

In its cross appeal, Summit argues that the trial court erred by: (1) requiring Summit to pay a portion of the environmental assessment, (2) refusing to award prejudgment interest, and (3) awarding Summit less than full attorney fees and costs. Moore responds that the trial court: (1) should have required Summit to pay all of the environmental assessment costs, (2) properly denied prejudgment interest, and (3) properly awarded Summit less than its claimed attorney fees.

I. NO MEETING OF MINDS

First, Moore contends that the trial court erred by concluding that the optional liquidated damages provision was essential to contract formation and that Moore's failure to initial the provision made the contract unenforceable. Moore further argues that the parties' conduct showed their mutual conviction that they were under contract. Summit responds that ample evidence supports the trial court's ruling that the parties never had a meeting of the minds.

A.    Standard of Review

Washington follows the objective manifestation test, under which, to form a contract, the parties must objectively manifest their mutual assent. *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wn.2d 171, 177-78, 94 P.3d 945 (2004). To reach mutual assent, there must be a "'meeting of the minds'" on the essential terms of the parties' agreement. *See Geonerco, Inc. v. Grand Ridge Props. IV LLC*, 146 Wn. App. 459, 465, 191 P.3d 76 (2008) (quoting *McEachern v.*

8

*Sherwood & Roberts, Inc.*, 36 Wn. App. 576, 579, 675 P.2d 1266 (1972)). "'The acceptance of an offer is always required to be identical with the offer, or there is no meeting of the minds and no contract.'" *Sea-Van Inv. Assocs. v. Hamilton*, 125 Wn.2d 120, 126, 881 P.2d 1035 (1994) (quoting *Blue Mountain Constr. Co. v. Grant Cnty. Sch. Dist. No. 150-204*, 49 Wn.2d 685, 688, 306 P.2d 209 (1957)). Generally, a purported acceptance that changes the offer's terms in any material respect operates as only a counter offer and does not consummate the contract. *Sea-Van*, 125 Wn.2d at 126.

What constitutes a material variation depends on the particular facts of each case. *Sea-Van*, 125 Wn.2d at 126. Normally, the existence of mutual assent or a meeting of the minds is a question of fact. *Sea-Van*, 125 Wn.2d at 126. We review the trial court's factual determinations only for substantial evidence. *Chatterton v. Bus. Valuation Research, Inc.*, 90 Wn. App. 150, 155, 951 P.2d 353 (1998). Unchallenged findings of fact are verities on appeal. *Robel v. Roundup Corp.*, 148 Wn.2d 35, 42, 59 P.3d 611 (2002).

B.     Absence of Assent to a Material Term

Moore argues that the liquidated damages provision was not essential to contract formation, because it was designated as "optional" and an optional provision cannot be essential. Br. of Appellant at 14. Moore, however, did not assign error to the trial court's finding of fact that Summit would not have signed the agreement without the provision limiting damages. As noted we must accept this unchallenged finding as a verity. *Robel*, 148 Wn.2d at 42. Because the liquidated damages provision was a condition of acceptance for Summit, the provision was a material term to this contract. *See Sea-Van*, 125 Wn.2d at 126. The provision was optional only in that both parties had to initial it before it became effective. The fact that both parties could

have agreed to the agreement without the provision does not preclude one party from deeming the provision so important that it would not proceed without it. The liquidated damages clause was a material term.

Moore argues next that his initials were not necessary to contract formation, because RCW 64.04.005 was revised in 2005 to eliminate the requirement that the parties to a residential purchase and sale agreement initial a liquidated damage provision in addition to a general signature. This, though, is a commercial, not a residential purchase and sale agreement; and nothing in the 2005 revision prevents a commercial purchase and sale agreement from requiring the parties to initial specific provisions to make those provisions operative. Further, nothing in the 2005 statutory revision suggests that requiring certain provisions to be initialed before they become operative contravenes public policy. Thus, the fact that the parties could have agreed to a liquidated damages provision without requiring additional initials does not enter into this analysis. The agreement required each party to initial the liquidated damages provision for it to be effective. Only one party initialed it.

Moore argues also that the contract's severability clause shows mutual intent that the invalidity of the liquidated damages provision would not jeopardize the validity of the rest of the agreement. Section 22 of the agreement states:

> Should any provision or portion hereof be declared invalid or in conflict with any law of the jurisdiction where this project is situated, the validity of all other provisions and portions hereof shall remain unaffected and in full force and effect.

Exh. 2.

This provision, though, is aimed at the situation where a court declares a provision which is part of a valid contract to be invalid. It plays no role in resolving whether the parties agreed to

a provision in the first place or whether the absence of agreement to a specific provision implies the absence of agreement to the entire contract. Those are the central issues at play in this appeal. They are resolved by the case law set out above, not by the severability clause.

Moore additionally argues that the parties' conduct showed their mutual conviction that they were under contract. Moore, however, did not assign error to the trial court's finding of fact that Summit believed that Moore had agreed to the liquidated damages provision requiring both parties' initials. Because Summit believed that Moore agreed to this provision, Summit deposited its earnest money into escrow and conducted itself as if it were under contract. Summit's conduct, based on its mistaken belief, supports the trial court's unchallenged finding that Summit would not have signed the agreement without the liquidated damages provision. Therefore, Summit's conduct, if anything, shows that the liquidated damages provision was a condition of acceptance for Summit and, thus, a material term to this contract. *See Sea-Van*, 125 Wn.2d at 126.

The liquidated damages provision was a material term to the formation of this contract. The parties never agreed to this provision. Therefore, under the standards above, there was no meeting of the minds and no mutual assent to enter into the agreement. When negotiations broke down in October 2007, Summit was entitled to return of the earnest money it had paid.

II. FINANCING CONTINGENCY

Moore urges that the trial court erroneously found that Summit terminated the agreement under the financing contingency, assuming that the parties had formed a contract in the first place. Specifically, Moore argues that Summit was obligated to close on the agreement based on

(1) Summit's conduct after allegedly exercising the financing contingency, and (2) the fact that Summit obtained financing.

The financing contingency is solely the creature of the purchase and sale agreement. As held above, the parties never effectively entered into that agreement. Therefore, the financing contingency plays no role in our decision here.

III. AMENDMENT OF THE PLEADINGS

Moore next contends that the trial court erred by allowing Summit to amend its answer to include a cross claim that there was no enforceable contract. In support, Moore argues that "[t]he undue delay by [Summit] along with the obvious hardship and prejudice to [Moore] are apparent, as is the manifest abuse of discretion by the trial court." Br. of Appellant at 28.

We review a trial court's decision to grant or deny a party's motion to amend a pleading for a manifest abuse of discretion. *Greenhalgh v. Dep't of Corr.*, 170 Wn. App. 137, 143, 282 P.3d 1175 (2012). Prejudice is the most important factor in considering a motion to amend. *Wilson v. Horsley*, 137 Wn.2d 500, 505, 974 P.2d 316 (1999). To evaluate prejudice, the court examines whether the amendment would cause undue delay or unfair surprise. *Caruso v. Local Union 690 of Int'l Bhd. of Teamsters*, 100 Wn.2d 343, 349-50, 670 P.2d 240 (1983). Leave to amend pleadings is to be "freely given when justice so requires." CR 15(a).

The trial court allowed Summit to amend its answer based on newly discovered information that went to the fundamental issue of contract formation. Moore did not assign error to the trial court's finding that Summit did not know that Moore failed to sign the optional provisions. Thus, we accept this unchallenged finding as a verity. *Robel*, 148 Wn.2d at 42. Moore did not ask the trial court for a continuance, nor does he explain how he was prejudiced.

12

Under these circumstances the trial court did not abuse its discretion in permitting this amendment.

IV. ENVIRONMENTAL ASSESSMENT COST

In its cross appeal, Summit argues that the trial court erred by requiring it to pay for a portion of the phase II environmental assessment. Moore responds that the trial court should have required Summit to pay the entire phase II assessment, because the agreement required Summit to pay for all financing costs and the phase II assessment was necessary for financing.

Moore is correct that section 7 of the agreement requires the buyer, Summit, to "pay all costs associated with financing." Exh. 3. He is also correct that because Summit's bank would not loan funds without a phase II environmental assessment, the cost of that assessment is associated with financing.

As we held above, however, the purchase and sale agreement was never validly formed. Thus, section 7 cannot provide authority for imposing this cost on Summit. The record does not show that the parties had a verbal agreement to divide the phase II assessment fee. Nor is any basis apparent under estoppel or any equitable theory that Summit is responsible for any part of the cost of the phase II assessment. For these reasons, Moore is solely responsible for the cost he incurred for the phase II assessment.

V. PREJUDGMENT INTEREST

Summit argues also in its cross appeal that the trial court erroneously refused to award prejudgment interest to it on the earnest money. Moore responds that the trial court properly denied prejudgment interest because (1) the agreement designated the earnest money as security

13

for Moore, (2) the trial court found that Summit owed Moore a portion of the environmental assessment fee, and (3) Ticor, not Moore, held the deposit.

We review a trial court's award of prejudgment interest for an abuse of discretion. *Seattle-First Nat'l Bank v. Wash. Ins. Guar. Ass'n*, 94 Wn. App. 744, 757, 972 P.2d 1282 (1999). An award of prejudgment interest is based on the principle that a party "'who retains money which he ought to pay to another should be charged interest upon it.'" *Forbes v. Am. Bldg. Maint. Co. W.*, 170 Wn.2d 157, 166, 240 P.3d 790 (2010) (quoting *Hansen v. Rothaus*, 107 Wn.2d 468, 473, 730 P.2d 662 (1986)). The court may award prejudgment interest on an unliquidated claim when the court can compute the amount of prejudgment interest with exactness from the evidence, without reliance on opinion or discretion. *Forbes*, 170 Wn.2d at 166. Prejudgment interest accrues from the date the claim arose to the date of judgment. *Seattle-First*, 94 Wn. App. at 760. In civil litigation, prejudgment interest accrues at the statutory judgment interest rate.[8] *Crest Inc. v. Costco Wholesale Corp.*, 128 Wn. App. 760, 775, 115 P.3d 349 (2005).

Moore argues that the amount at issue is unliquidated, because the parties dispute whether Summit must pay a portion of the phase II assessment fee from the earnest money deposit. But because we hold that Summit is not liable for any part of that assessment, the parties' disagreement over that issue does not disqualify Summit from receiving prejudgment interest. Further, that the court registry, rather than Moore, held the funds has no bearing on a prejudgment interest award. *Forbes*, 170 Wn.2d at 167. Finally, Moore's representation that Ticor held the earnest money as security for Moore, not Summit does not bear on the right to

---

[8] RCW 4.56.110; RCW 19.52.020.

No. 42394-4-II

prejudgment interest. The question, rather, is whether Moore retained money which he should have paid to Summit. *See Forbes*, 170 Wn.2d at 166.

Here, Moore deprived Summit of the use of its funds, and we can compute the prejudgment interest amount with exactness based on the evidence. *See Forbes*, 170 Wn.2d at 166. Summit ended negotiations and requested the return of its earnest money on October 4, 2007. Moore refused. Those funds were properly Summit's, and the trial court disbursed the contested funds in Summit's favor on July 22, 2011. Thus, Summit is entitled to prejudgment interest at the statutory judgment interest rate for the period of October 4, 2007 to July 22, 2011.

## VI. ATTORNEY FEES

### A.    Attorney Fees at Trial

At trial Summit requested $64,285.00 for attorney fees and $2,290.74 for costs. The trial court noted that Summit, as the prevailing party, was entitled to attorney fees under the agreement and granted $50,000.00 for fees. The trial court explained the amount of its award by stating:

> I spent the ten and a half years that I've been on the bench astounded at how much money attorneys ask for in terms of attorney's fees. . . . I'll order $50,000 on attorney's fees. That is reasonable in this matter.

Report of Proceedings (June 10, 2011) at 11.

Summit argues that the trial court erred by not providing any method or rationale for its denial of full attorney fees and costs.

We will not disturb the trial court's award of attorney fees, unless the trial court exercised its discretion in a manifestly unreasonable manner or based its decision on untenable grounds. *Seattle-First*, 94 Wn. App. at 761-62. We will reverse an attorney fees award if the record fails

15

to mention the trial court's calculation method or if the court used an improper method. *Seattle-First*, 94 Wn. App. at 762.

In Washington, "'[a]ttorney fees may be recovered only when authorized by statute, a recognized ground of equity, or agreement of the parties.'" *Niccum v. Enquist*, 175 Wn.2d 441, 446, 286 P.3d 966 (2012) (quoting *Wiley v. Rehak*, 143 Wn.2d 339, 348, 20 P.3d 404 (2001)). As we hold, Summit and Moore never entered into a valid agreement. Therefore, the attorney fees provisions in the agreement are not directly effective and cannot by themselves supply the basis for an award. No statute supporting an award in these circumstances has been offered. Therefore, the remaining question is whether any ground of equity supports an award of attorney fees.

The answer lies in the decisions in *Park v. Ross Edwards, Inc.*, 41 Wn. App. 833, 706 P.2d 1097 (1985) and *Kaintz v. PLG, Inc.*, 147 Wn. App. 782, 197 P.3d 710 (2008). The circumstances in *Park* resembled those presented here. In negotiating a purchase and sale agreement for commercial property, the buyer made three changes to the proposal by the seller. *Park*, 41 Wn. App. at 834-35. The parties initialed two of the changes, but the seller did not initial the third. *Park*, 41 Wn. App. at 834-35. The buyer stated that he would not be willing to purchase the land without the third provision. *Park*, 41 Wn. App. at 835. The deal later collapsed, and the buyer brought an action for specific performance, damages and other remedies.

The trial court held that because there was no meeting of the minds between the parties, there was no valid contract between them. *Park*, 41 Wn. App. at 837. The appellate court affirmed. On the question of attorney fees, the appellate court noted that if the attorney fees

16

provision in the purported agreement had been unilateral, that is, awarding fees to only one party, RCW 4.34.330 would have allowed the prevailing party to recover, even though the contract itself was unenforceable. *Park*, 41 Wn. App. at 838; *see also Herzog Aluminum, Inc. v. Gen. Am. Window Corp.*, 39 Wn. App. 188, 692 P.2d 867 (1984). In *Park*, as here, the attorney fees provision was bilateral.[9] The appellate court concluded that it made no sense to apply this rule only to unilateral fees provisions and held that the prevailing party could recover attorney fees, even though the contract never was effective. *Park*, 41 Wn. App. at 838-39. This rule was followed in *Kaintz*, 147 Wn. App. at 784, in which the court identified its basis as the equitable principle of mutuality of remedy. In applying this rule, the trial court determines whether to make an award of attorney fees by looking to the terms of the contract. *Kaintz*, 147 Wn. App. at 790.

The rule announced in *Park* fits the circumstances of this case as closely as it did those in *Park*. Therefore, under the equitable principle of mutuality of remedy, Summit is entitled to attorney fees at trial. The attorney fees provision in the agreement granted the prevailing party "all costs and expenses incurred by the other party." Exh. 3. That is the standard for determining the amount of the award. Moore challenges whether certain portions of the fees claimed by Summit are reasonable. The trial court did not resolve those questions.

---

[9] The provision in the agreement in this appeal stated:

> If either party hereto fails to perform any of its obligations under this Agreement or if any dispute arises between the parties hereto concerning the meaning or interpretation of any provision of this Agreement, then the defaulting party or the party not prevailing in such dispute, as the case may be, shall pay any and all costs and expenses incurred by the other party on account of such default and/or in enforcing or establishing its rights hereunder, including, without limitation, court costs and reasonable attorneys' fees and disbursements.

Exh. 3.

17

No. 42394-4-II

Therefore, the attorney fees award at trial is reversed and Summit is awarded full attorney fees and costs at trial consistently with the provision of the agreement set out in footnote 9, above. This matter is remanded to the trial court to determine the amount of Summit's reasonable attorney fees and costs.

B.    Attorney Fees on Appeal

Summit asks for attorney fees on appeal under RAP 18.1. In *Kaintz*, 147 Wn. App. at 790-91, we granted attorney fees under RAP 18.1 based on fee provisions in an agreement similar in material terms to those found in the agreement here. Therefore, such an award is appropriate. The procedures in RAP 18.1 govern the determination of the amount of the award.

VII. CONCLUSION

We affirm the trial court's decision that the parties failed to form a contract because they lacked a meeting of the minds. We also affirm the court's decision allowing Summit to amend its answer to include a cross claim and disbursing the earnest money to Summit.

We reverse the trial court's decision obligating Summit to pay a portion of the phase II environmental assessment fee and hold that Moore is solely responsible for the cost he incurred for that assessment. We also reverse the trial court's ruling awarding no prejudgment interest on the earnest money and hold that Summit is entitled to prejudgment interest at the statutory judgment interest rate for the period of October 4, 2007 to July 22, 2011. Finally, we reverse the partial award of attorney fees to Summit, hold that Summit is entitled to recover its full

18

No. 42394-4-II

reasonable attorney fees and costs, and remand for the determination of the amount. We also award attorney fees on appeal to Summit.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJØRGEN, J.

We concur:

QUINN-BRINTNALL, J.

JOHANSON, A.C.J.

19