# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| WOODBURN INDUSTRIAL CAPITAL GROUP, an Oregon limited liability company, | No. 55135-7-II |
| Appellant, | |
| v. | |
| ROBERT PLUMMER SR., an individual, and ROBERT PLUMMER JR., an individual, | UNPUBLISHED OPINION |
| Respondents. | |

VELJACIC, J. — Woodburn Industrial Capital Group (WICG) offered to buy Plummer Sr.'s (Plummer) property by sending him a purchase and sales agreement (PSA). The PSA included an offer deadline, and Plummer failed to sign the PSA by the deadline. After the deadline had passed, WICG and Plummer continued to communicate regarding the offer, and WICG extended the deadline during a phone conversation. Plummer signed and returned the PSA without modifying any terms. A few weeks later, Plummer attempted to escape the contract by sending WICG a letter indicating his signature was intended as a counteroffer not an acceptance, and that he revoked the counteroffer. WICG sued for specific performance. Both parties moved for summary judgment. The superior court granted Plummer's motion. WICG appeals, arguing that when Plummer signed the PSA they entered into a valid contract, that the agreement includes a sufficient property description to satisfy the statute of frauds.

We conclude Plummer was not entitled to judgment as a matter of law because whether WICG extended its offer deadline and Plummer's acceptance was valid are genuine issues of material fact. Accordingly, we reverse.

FACTS

WICG sought to purchase Plummer's real property. In early October, WICG sent Plummer an offer to purchase his real property in the form of a standard PSA. The PSA contained a description of the property using a street address and tax parcel number. It also contained a "Time for Acceptance" clause that stated: "If Seller does not return to Buyer a signed and dated version of this Agreement on or before 5:00 PM Pacific Time on October 10, 2018, then the [e]arnest [m]oney shall be promptly refunded to Buyer and thereafter, neither party shall have any further right or obligation hereunder." Clerk's Papers (CP) at 14. The PSA also included a time-is-of-the-essence clause.

Plummer failed to sign the PSA before the offer deadline passed. WICG did not abandon its efforts to purchase Plummer's property, and the parties continued to communicate regarding WICG's offer. On January 8, WICG spoke with Plummer over the phone and informed him that the offer was still open. The same day, Plummer signed the PSA without altering any terms and returned it to WICG. Approximately two weeks after signing the PSA, Plummer contacted WICG stating that his signature on the PSA did not constitute acceptance but was instead a counteroffer, which he was now revoking.

Prior to WICG suing Plummer, Plummer's sons requested a court determine he was incapacitated. The court appointed a guardian ad litem, who issued a report. In a response to such report, Plummer's son issued a response in which he acknowledged that Plummer had come to

him and stated that he wanted "to get out of the contract." CP at 100. The court ruled that Plummer was not an incapacitated person.

After the guardianship proceeding, WICG sued Plummer seeking specific performance, and sued Plummer Jr. for tortious interference with contract. Both parties moved for summary judgment. In its motion for partial summary judgment as to Plummer Sr., WICG argued that when Plummer signed the PSA it created an enforceable contract and that specific performance was appropriate. Plummer also moved for summary judgment, arguing his signature on the PSA was a counteroffer that was properly revoked, WICG's offer had expired therefore acceptance was impossible, and the PSA failed to include a property description that satisfied the statute of frauds.

In his declaration attached to the motion, Plummer did not contest WICG's declaration that stated it had extended the deadline, nor did he dispute his prior statement that he wanted to escape the contract. He stated "After I failed to accept the offer WICG's agent Stephen Ford contacted me multiple times over the next couple of months, trying to get me to sign" and "I heard nothing from . . . WICG regarding acceptance of the [PSA] after I signed on January 8, 2019. On January 25, 2019, at my request my attorney sent a letter to WICG withdrawing the offer to sell contained in the [PSA] I had signed on January 8, 2019." CP at 117.

The superior court granted Plummer's order for summary judgment and denied WICG's. WICG appeals the superior court's order.

ANALYSIS

WICG argues that the trial court should have granted its motion for summary judgment because it extended its offer deadline and Plummer accepted it. In the alternative, it argues the trial court erred when it granted summary judgment for Plummer because whether it extended the offer deadline and whether Plummer accepted the offer by signing the PSA are genuine issues of

3

material fact. We agree with WICG that there are material issues of fact precluding summary judgment.

I.    STANDARD OF REVIEW

We review a superior court's order granting summary judgment de novo, and performs the same inquiry as the superior court. *Strauss v. Premera Blue Cross*, 194 Wn.2d 296, 300, 449 P.3d 640 (2019); *Estate of Carter v. Carden*, 11 Wn. App. 2d 573, 581, 455 P.3d 197 (2019). We consider the facts and the inferences from the facts in a light most favorable to the nonmoving party. *Bremerton Pub. Safety Ass'n v. City of Bremerton*, 104 Wn. App. 226, 230, 15 P.3d 688 (2001). We may grant summary judgment if the pleadings, affidavits, and depositions establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c); *RockRock Grp., LLC v. Value Logic, LLC*, 194 Wn. App. 904, 913, 380 P.3d 545 (2016). "A genuine issue is one upon which reasonable people may disagree," and "[a] material fact is one upon which all or part of the outcome of the litigation depends." *Youker v. Douglas County*, 178 Wn. App. 793, 796, 327 P.3d 1243 (2014); *Hill v. Cox*, 110 Wn. App. 394, 402, 41 P.3d 495 (2002).

II.    LEGAL PRINCIPLES

Purchase and sales agreements are contracts for the conveyance of real property. *Geonerco, Inc. v. Grand Ridge Props. IV LLC*, 146 Wn. App. 459, 465, 191 P.3d 76 (2008). To form a contract, including purchase and sales agreements, the contracting parties must have a "meeting of the minds" as to the essential terms of their agreement. *Id*. We follow the "'objective manifestation theory of contracts.'" *Carden*, 11 Wn. App. 2d at 581-82 (quoting *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503, 115 P.3d 262 (2005)). When interpreting a contract, we attempt to ascertain the intent of the parties by examining the objective

manifestations of the parties. *Carden*, 11. Wn. App. 2d at 582. To that end, we apply the "context rule" to interpret contracts, allowing us to consider extrinsic evidence, including the "'circumstances leading to the execution of the contract.'" *Roats v. Blakely Island Maint. Comm'n, Inc.*, 169 Wn. App. 263, 274, 279 P.3d 943 (2012) (quoting *Shafer v. Bd. of Trustees of Sandy Hook Yacht Club Estates, Inc.*, 76 Wn. App. 267, 275, 883 P.2d 1387 (1994)).

"The statute of frauds requires all real estate conveyances, including a purchase and sales agreement's conveyance of a future interest, to contain 'a description of the land sufficiently definite to locate it without recourse to oral testimony.'" *Grand Ridge Props.*, 146 Wn. App. at 465-66 (internal quotation marks omitted) (quoting *Key Design, Inc. v. Moser*, 138 Wn.2d 875, 881, 983 P.2d 653 (1999)). Without a sufficient description of the land, a contract for the conveyance of real property is legally void. *Grand Ridge Props.*, 146 Wn. App. at 466. Tax parcel numbers satisfy the legal description for property tax purposes. RCW 84.04.055.

III.   ANALYSIS

We conclude that the superior court erred in granting Plummer's motion for summary judgment because whether the offer was still valid when Plummer signed the PSA due to WICG extending its offer deadline is a genuine issue of material fact. Viewing the evidence in the light most favorable to WICG, WICG extended its offer and Plummer signed the valid offer. WICG argues that it extended its offer deadline, thereby allowing Plummer to accept its offer after the deadline had passed. Plummer admits that WICG continued to speak with him after the deadline, encouraging him to sign the offer. Plummer's statement to his son that he wanted to escape the contract also implies that Plummer understood the deadline had been extended.

Further, Plummer's conduct implies he knew the offer deadline had been extended. Plummer signed the PSA the same day he spoke with WICG, and he returned it without modifying

any terms within the document.  The facts available to us, viewed in the light most favorable to WICG, show that WICG extended its offer deadline, thereby making the offer valid when Plummer signed it.  Therefore, there is a genuine issue of material fact bearing on whether the parties had a meeting of the minds and made an enforceable contract; Plummer was not entitled to judgment as a matter of law.

Although we conclude that whether WICG extended its offer, thereby making Plummer's signature an acceptance, is a genuine issue of material fact, we additionally note that the PSA included a sufficiently definite property description to satisfy the statute of frauds.  In his brief, Plummer acknowledges that the parcel number is sufficient as a legal description, but argues the parcel number is negated by the additional language ""Legal Description to be determined in Escrow."  Resp't at 18.  Plummer fails to cite to any legal authority to support that proposition.  The statute of frauds merely requires a description sufficient to identify the property without oral testimony.  *Grand Ridge Props.*, 146 Wn. App. at 465-66.  The parcel number in the PSA satisfies that requirement by Plummer's own admission and RCW 84.04.055, therefore the PSA does not violate the statute of frauds.

IV.     ATTORNEY FEES

Plummer argues that, although no agreement exists between him and WICG, pursuant to their nonexistent agreement he is entitled to attorney's fees.

"In Washington, reasonable attorney fees may be awarded when authorized by a contract." *Salewski v. Pilchuck Veterinary Hosp., Inc., P.S.*, 189 Wn. App. 898, 910, 359 P.3d 884 (2015). When a contract provides for attorney's fees, such provision includes fees on appeal.  *Id*.  Under RCW 4.84.330, when a contract includes terms that allow collection of attorney's fees, the

6

prevailing party is entitled to such fees. A prevailing party is one that receives a judgment in its favor. *Mike's Painting, Inc. v. Carter Welsh, Inc.*, 95 Wn. App. 64, 68, 975 P.2d 532 (1999).

We conclude that Plummer is not entitled to attorney's fees because summary judgment was improper and he is therefore not the prevailing party on appeal. *See* RCW 4.84.330; *Carter Welsh*, 95 Wn. App. at 68.

CONCLUSION

We conclude Plummer was not entitled to judgment as a matter of law because whether WICG extended its offer deadline and Plummer's acceptance was valid is a genuine issue of material fact. The grant of summary judgment was erroneous. Accordingly, we reverse.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, J.

We concur:

_____
Worswick, P.J.

_____
Cruser, J.

7